TRINOVA CORPORATION, APPELLEE, *v.* PILKINGTON BROTHERS, P.L.C., ET AL.; LIBBEY–OWENS–FORD COMPANY, INC. ET AL., APPELLANTS.

[Cite as *TRINOVA Corp. v. Pilkington Bros., P.L.C.* (1994), 70 Ohio St.3d 271.]

(No. 92–2240—Submitted January 5, 1994—Decided September 14, 1994.)

*Porter, Wright, Morris & Arthur* and *Richard M. Markus; Cooper, Straub, Walinski & Cramer, Richard S. Walinski* and *Joseph P. Thacker; Pope & John, Ltd.* and *Peter C. John,* for appellee.

*Vorys, Sater, Seymour & Pease, Duke W. Thomas* and *Sandra J. Anderson; Fuller & Henry, Thomas S. Zaremba* and *Sue A. Sikkema,* for appellants.

MOYER, C.J.   The primary issue presented is whether LOF may raise as a defense to an action by TRINOVA a term contained in the SEA to which LOF was not a party.

Pilkington first contends that the SEA and the TAA are "integrated parts of the entire agreement" and, therefore, terms contained in the SEA are available to LOF as defenses.   We believe that Pilkington's argument is fatally flawed because of its fundamental misinterpretation of the principle of contract integration.   Contract integration is actually a corollary to the parol evidence rule.   Contract integration provides that where the parties' intent is sought to be ascertained from several writings, a prior writing will be rejected in favor of a subsequent one if the latter writing contains the whole of the parties' agreement. If the subsequent agreement is complete and unambiguous on its face, parol evidence is inadmissible to show a contrary intent of the parties.   3 Corbin on Contracts (1960) 357, Section 573; *Burton v. Durkee* (1952), 158 Ohio St. 313, 49 O.O. 174, 109 N.E.2d 265.   If there is a total integration of the writings, as Pilkington contends is expressed in Section 15.06 of the SEA, then the SEA would become the total and singular expression of the agreement and the TAA would lose its vitality for all purposes.   The TAA would cease to exist and the only expression of intent between the parties would be contained in the SEA. There would no longer be any contract between TRINOVA and LOF.

Pilkington's position is further undermined by the fact that LOF was not a party to the SEA.   It is generally recognized that a contract is binding only upon the parties to that contract.   *Cleveland Window Glass & Door Co. v. Natl. Surety Co.* (1928), 118 Ohio St. 414, 161 N.E. 280.   If these contracts are truly integrated, then LOF retains no connection to the transaction.   This is not the

meaning Pilkington attaches to the documents at issue and cannot be supported as the intent of the parties.

A more realistic interpretation of Pilkington's argument is that the SEA is only a partially integrated contract and, to the extent that the TAA and SEA conflict, the SEA indemnification provision applies. However, this interpretation is inconsistent with the all-encompassing, boilerplate language of the SEA merger clause, which provides:

"Section 15.06. *Entire Agreement; Amendment.* This Agreement, the exhibits and schedules hereto and the related agreements specifically referred to herein embody the entire agreement of the parties hereto with respect to the subject matter hereof and supersede all prior agreements with respect thereto. This Agreement may be amended, and any provision hereof waived, but only in writing signed by the party against whom such amendment or waiver is sought to be enforced."

The related agreements to which Section 15.06 refers are contained in yet a third document, the Closing Book, to which LOF is not a party. Pilkington contends that the Closing Book refers to the TAA as an "ancillary document" and the SEA as the "basic document." From this Pilkington reasons that the TAA is somehow subservient to the SEA. This argument still avoids the fact that LOF is not a party. Integration is a rule of substantive law to be decided by the trial judge in the first instance. See 4 Williston on Contracts 3d (1961) 955, Section 633. The question of partial integration must be determined from the four corners of the document itself and not by a prefatory table of documents as Pilkington suggests. See 2 Restatement of the Law 2d, Contracts (1981) 117–118, Section 210(3). Furthermore, in the case of a partial integration, only consistent additional terms may be added, not inconsistent terms.

The TAA and SEA are integrated contracts independent of each other. However, each involves separate subject matters, with separate purposes and different parties. The doctrine of integration is meant to supply missing meaning in order to effectuate the full intent of the parties. It is not meant to allow distinct contracts to be used to contradict unambiguous language. Quite simply, this is not a case of contract integration as Pilkington maintains, but is rather a case of contract and the intent of the parties thereto.

The overriding concern of any court when construing a contract is to ascertain and effectuate the intention of the parties. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 544 N.E.2d 920; *Skivolocki v. E. Ohio Gas Co.* (1974), 38 Ohio St.2d 244, 67 O.O.2d 321, 313 N.E.2d 374. Generally, "evidence can not be introduced to show an agreement between the parties materially different from that expressed by clear and unambiguous language of the instrument." *Blosser v. Enderlin* (1925), 113 Ohio St. 121, 148 N.E. 393,

paragraph two of the syllabus; *Latina v. Woodpath Dev. Co.* (1991), 57 Ohio St.3d 212, 567 N.E.2d 262. This is not to suggest that two related documents may not both be read in order to establish the intention of the parties. However, this must be accomplished within the context of establishing intent and not for the purpose of negating clear and unambiguous language.

The agreement upon which suit was brought was the TAA. The parties to that agreement are TRINOVA and LOF. In clear and unambiguous terms, it provides that LOF will assume "all obligations and liabilities of [TRINOVA] * * * whether known or unknown, absolute or contingent * * *." The liability at issue is a current deduction for future pension contributions. There is ample evidence in the record to support the factual conclusion that the parties knew TRINOVA had calculated its taxes to reflect future pension contributions for a long period of time. Whether this liability is classified as absolute or contingent, it was a known future liability of which all parties must be deemed aware. Therefore, it falls within the liabilities assumed by LOF. Absent ambiguity, there is no necessity for interpretation. *Allen v. Std. Oil Co.* (1982), 2 Ohio St.3d 122, 2 OBR 671, 443 N.E.2d 497.

To say that the TAA and SEA are not related documents would be denying the obvious. Yet, a subsequent contract does not supersede or modify unambiguous terms in a preceding contract unless the subsequent agreement specifically evidences an intent to do so. For this reason, we find *Edward A. Kemmler Mem. Found. v. 691/733 E. Dublin–Granville Rd. Co.* (1992), 62 Ohio St.3d 494, 584 N.E.2d 695, and *Ctr. Ridge Ganley, Inc. v. Stinn* (1987), 31 Ohio St.3d 310, 31 OBR 587, 511 N.E.2d 106, inapplicable. The TAA is complete in its assumption of liabilities and, therefore, there is no need to refer to a second document executed by different parties to supply missing terms.

We are likewise unpersuaded by the argument that LOF was a third-party beneficiary of the contract executed by TRINOVA and Pilkington. In *Hill v. Sonitrol of Southwestern Ohio, Inc.* (1988), 36 Ohio St.3d 36, 40, 521 N.E.2d 780, 784, we adopted Section 302 of the Restatement of the Law 2d, Contracts (1981) 439–440, which provides:

" '(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

" ' * * *

" '(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.' "

Under this theory, only an intended beneficiary may exert rights to a contract of which he is not a party. The so-called "intent to benefit" test provides that

there must be evidence, on the part of the promisee, that he intended to directly benefit a third party, and not simply that some incidental benefit was conferred on an unrelated party by the promisee's actions under the contract. There must be evidence that the promisee assumed a duty to the third party. *Norfolk & W. Ry. Co. v. United States* (C.A.6, 1980), 641 F.2d 1201. We find no abuse of discretion in the trial court's determination of intent here.

Finally, we address Pilkington's argument that TRINOVA breached its duty under Section 5.13 of the SEA to adequately reflect all material transactions in the "[b]ooks and [r]ecords of the LOF Glass Business * * *." Both the domestic tax manager for TRINOVA and TRINOVA's assistant comptroller testified that the pension deduction assumption was reflected in the intercompany accounts statement supplied to Pilkington. Pilkington's own mergers and acquisition financial specialist, an officer of Pilkington, testified to how this practice was reflected in the balance sheet. There was also extensive testimony on the voluminous amount of pension material supplied to Pilkington, including IRS form 5500s, which detailed past pension deductions prior to the execution of the SEA. It was a reasonable inference by the trier of fact that Pilkington was well aware of TRINOVA's past pension practices and that the material supplied to Pilkington more than adequately complied with TRINOVA's duty under the books and records warranty.

It is consistent with the record before us to conclude that Pilkington was aware of TRINOVA's pension assumptions concerning future tax liability and that Pilkington made a conscious business decision to cease making contributions to the fund, thereby causing TRINOVA to incur substantial unexpected liability.

For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

DOUGLAS, F.E. SWEENEY and PFEIFER, JJ., concur.

A.W. SWEENEY, WRIGHT and GRADY, JJ., dissent.

THOMAS J. GRADY, J, of the Second Appellate District, sitting for RESNICK, J.

A. WILLIAM SWEENEY, J., dissenting. Until today, this court has adhered to the long-held principle of contract law that writings executed as part of the same transaction should be read together. See *Edward A. Kemmler Mem. Found. v. 691/733 E. Dublin-Granville Rd. Co.* (1992), 62 Ohio St.3d 494, 499, 584 N.E.2d 695, 698; *Ctr. Ridge Ganley, Inc. v. Stinn* (1987), 31 Ohio St.3d 310, 314, 31 OBR 587, 590, 511 N.E.2d 106, 109; *Thayer v. Luce* (1871), 22 Ohio St. 62, paragraphs one and two of the syllabus; and *White v. Brocaw* (1863), 14 Ohio St. 339, paragraph three of the syllabus.

The majority's distinction embodied in the syllabus—the so-called doctrine of "contract integration"—ignores the fact that the TAA and SEA herein were executed at virtually the same time. The TAA was signed on March 6, 1986, while the SEA was signed on the very next day. To exalt a distinction such as that propounded by the majority opinion, which essentially renders the terms of the SEA unenforceable, defies logic, fairness and common sense.

Given the fact that the transfer between appellants and TRINOVA was voluminous and complex, I believe the majority errs in permitting the lower courts to exclude relevant evidence of the SEA and Closing Book which were executed and compiled in combination with the TAA. The maxim which is at stake in the cause *sub judice* is one that this court so eloquently noted in another recent case: "Let the jury decide [the evidence]!" *McFarland v. Bruno Mach. Corp.* (1994), 68 Ohio St.3d 305, 312, 626 N.E.2d 659, 664.

For these reasons, I would reverse the judgment of the court of appeals and remand the cause for a new trial, in order to let the jury consider the terms of the SEA in deciding the rights and liabilities of the instant parties.

WRIGHT and GRADY, JJ., concur in the foregoing dissenting opinion.