DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Nicholas Figetakis appeals from an order of the Summit County Court of Common Pleas granting summary judgment for D. Lawrence Smith, Jr. ("Smith"), Smith's wife Demetra, 1964, Inc., an Ohio corporation in which Smith is the sole officer, Constance Hesske, Jerome L. Holub, and Alice L. Honeycutt. We affirm in part and reverse in part.
In 1991, Figetakis gave Smith a check payable to 1964, Inc. in the amount of $30,000. The money was intended to be used, and was used, to pay part of the $145,000 purchase price of The Great Steak and Potato Company franchise located at Chapel Hill Mall in Akron (the "business"). Smith provided $70,000-$75,000 of the purchase price. The remainder was financed.
The parties disagree on the characterization of Figetakis's $30,000 contribution. Figetakis believes he became Smith's business partner as the result of his contribution and claims he was to receive 25 percent of the net profits of the business in exchange for his investment. Smith characterizes Figetakis's contribution as a loan but admits that he agreed to pay Figetakis 25 percent of whatever amounts Smith withdrew from the business account for personal use. Smith made no percentage payments directly to Figetakis between 1991 and 1994 but claims that he periodically deposited percentage payments for Figetakis's benefit into a separate interest-bearing account held in the name of 1964, Inc. The parties opened that account in 1992 with a deposit by Figetakis of personal funds in the amount of $27,000.
For the first three years of their business arrangement, the parties executed nothing in writing to memorialize their understanding. Neither Smith nor 1964, Inc. returned any of Figetakis's capital to him nor did the defendants make any payments of interest to Figetakis. In 1995, according to Figetakis, Smith expressed concern that, in the event of Smith's death, Figetakis would have nothing to evidence Smith's $30,000 debt to him. Smith then asked Hesske, an attorney, to draft an agreement relative to the $30,000.
On December 15, 1994, Hesske presented a one-page agreement to Figetakis and to Smith. That agreement provides:
 1. Nicholas Figetakis does agree to loan to D. Lawrence Smith the sum of Thirty Thousand Dollars ($30,000) at -0-% interest.
 2. D. Lawrence Smith is under no restrictions by Nicholas Figetakis as to how the money is to be used.
 3. This Agreement sets forth that repayment of this loan is to be in monthly installments of five hundred dollars ($500.00) per month over a period of five (5) years.
 4. Installment payments will commence on January 1, 2000.
The Parties by this Agreement are bound to perform as set forth in this Agreement. Any lack of performance by either part[y] will be considered a Breach of this Agreement.
Figetakis and Smith signed the agreement, although Figetakis maintains that the zero-interest amount was not inserted until after he signed. Hesske and Holub signed the agreement as witnesses. Honeycutt attested as notary public.
Nearly four weeks after signing the agreement, Smith sent Figetakis a letter, notifying him of Smith's intention, effective January 15, 1995, to "terminate our informal business agreement" and advising that "[a]ll business profits will be distributed to the both of us using the agreed upon formula prior to the 15th." The letter also stated that any amounts sent to Figetakis by Smith after January 15, 1995, would be a "partial or full return of your original $30,000 investment."
Smith then sent a letter to Hesske, enclosing a check in the amount of $44,120.42 payable to Figetakis, and advising that the amount represented a return of Figetakis's $27,000 and Figetakis's "share of money and profits from the business." Smith also stated that he would provide a timetable for the return of Figetakis's original $30,000 investment.
Figetakis brought an action against Smith, Smith's wife Demetra, and 1964, Inc. (collectively, the "defendants") for an accounting and breach of contract, alleging that his oral agreement with the defendants entitled him to continue receiving 25 percent of the business profits. Figetakis also alleged that the Smiths conspired against him and breached a fiduciary duty to him.
Figetakis also brought an action against Hesske, alleging that her representation of both the defendants and him created a conflict of interest and that she conspired with the defendants by drafting an agreement that characterized his investment in the business as a loan. Figetakis also named as defendants Jerome L. Holub, claiming that Hesske committed her misdeeds during the course of her employment with Holub, and Honeycutt, a Holub employee, claiming that she notarized the agreement although she had not been present when he and the defendants signed it. Figetakis attached an affidavit to his complaint, acknowledging that he had signed the agreement but that only the defendants and Hesske had been present at execution.
The defendants moved to dismiss and for summary judgment, arguing that: (1) recovery by Figetakis under the oral agreement was barred by the statute of frauds; (2) only the written agreement between the parties was valid; (3) defendants had not breached the written agreement because they were not required to begin making payments until January 1, 2000; and (4) Figetakis could not claim that the written agreement was void on the basis of his lack of capacity because he admitted during his deposition that he understood the meaning of its terms.
Hesske, Holub, and Honeycutt also moved for summary judgment, arguing that: (1) Hesske, as shown by her affidavit, prepared the loan agreement at the request of both Figetakis and Smith; (2) despite having questions about the agreement, Figetakis admitted that he chose not to ask those questions and signed the agreement voluntarily; (3) the only evidence on the issue of whether Hesske was operating in the course of her employment for Holub when she prepared the agreement was Hesske's affidavit in which she averred that she had prepared a will for Figetakis and had handled one matter for another of Smith's companies but that she had never worked for 1964, Inc. and that neither Figetakis nor Smith had ever been a client of Holub; and (4) because Figetakis admitted that he signed the loan agreement, Honeycutt's signature on the agreement was irrelevant.
In response to the motions for summary judgment, Figetakis referred to several sections of Smith's deposition and to the exhibits discussed during that deposition.
The trial court granted summary judgment for the defendants, finding that the contract action against the Smiths and 1964, Inc. was not barred by the statute of frauds but that the only performance required by the defendants was repayment of the $30,000 which was not to begin until the year 2000. The trial court also granted summary judgment for Hesske, Holub, and Honeycutt, finding that: (1) the only evidence regarding whether Hesske was working in an employer-employee relationship with Holub when she drafted the agreement was Hesske's affidavit which said she was not; (2) there was no evidence that Hesske committed malpractice or engaged in a conspiracy in drafting the agreement for Figetakis and Smith; and (3) Honeycutt's signature on the document was irrelevant to the causes of action brought by Figetakis.
Figetakis has appealed, asserting three assignments of error.
 I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF D. LAWRENCE SMITH JR., DEMETRA C. SMITH, AND 1964, INC. AS THERE WERE GENUINE ISSUES OF MATERIAL FACT AND SAID APPELLEES WERE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.
In his first assignment of error, Figetakis argues that summary judgment should not have been granted to the defendants because: (1) Smith admitted the existence of an oral agreement with Figetakis in which he was to pay Figetakis 25 percent of whatever personal sums Smith withdrew from 1964, Inc., Smith admitted making payments to an account for Figetakis in accordance with that agreement, and Smith admitted making payments to Figetakis as late as January 1995; (2) there was evidence of a conspiracy (a) on the part of Smith with Hesske because they had known each other prior to execution of the agreement and (b) between the Smiths because of their "perpetration of the purported loan document"; (3) there was evidence of a breach of fiduciary duty on Smith's part because of the "partnership agreement" between Figetakis and Smith and because of Smith's knowledge of Figetakis's "mental problems"; and (4) there was evidence that Smith defrauded Figetakis by having Hesske prepare the loan agreement, knowing that it was contrary to his oral agreement with Figetakis.
 A.
In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard used by the trial court.Perkins v. Lavin (1994), 98 Ohio App.3d 378, 381. Pursuant to Civ.R. 56(C), summary judgment is not proper unless "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." State ex rel. Howard v. Ferreri (1994), 70 Ohio St.3d 587,589. Doubts must be resolved in favor of the nonmoving party. Horton v. Hardwick Chem. Corp. (1995), 73 Ohio St.3d 679,686.
A defendant moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact on an essential element of the plaintiff's claim. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429. The defendant must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the plaintiff has no evidence to support his claims. Id. Then, and only then, is there a reciprocal burden on the plaintiff to respond by showing that there are genuine issues of material fact to be tried. Id.
 B. (1)
In granting the defendants' motion for summary judgment, the trial court appears to have concluded that the written agreement between Figetakis and Smith was the complete understanding between the parties regarding Figetakis's $30,000 contribution to the business and that any prior understandings between the parties regarding business profits, although not prohibited by the Statute of Frauds, were nonetheless unenforceable.
Pursuant to the Statute of Frauds, a party may not bring an action "upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized." R.C.1335.05. An oral agreement may be excepted from the restrictions of the Statute of Frauds, however, where there has been partial performance of that agreement and where the party relying on the agreement has changed his position to his detriment making it impractical or impossible to return the parties to their original status. Saydell v. Geppetto's Pizza Ribs Franchise Sys., Inc.
(1994), 100 Ohio App.3d 111, 121.
The parties do not dispute that Figetakis gave Smith $30,000 for which Figetakis never received interest payments. Nor do they dispute that Smith had been paying into an account held for the benefit of Figetakis a percentage of what Smith personally paid himself from the business. Smith acknowledges that in 1995 he issued a check representing the amount in that account to Figetakis. The trial court correctly concluded that the oral agreement had been partly performed by the parties and was not barred by the Statute of Frauds.
Existence of the written agreement between the parties raises parol evidence questions, however, as to whether the written agreement reflected the complete understanding of the parties as to the $30,000 and whether evidence of the oral agreement is even admissible. There is also a question as to whether the oral agreement continued to be performed after the written agreement was executed.
The parol evidence rule is a rule of substantive law that prohibits a party to a complete and unambiguous written contract from contradicting the terms of that written contract with evidence of prior agreements between the parties. TRINOVA Corp. v.Pilkington Bros., P.L.C. (1994), 70 Ohio St.3d 271, syllabus;Natl. City Bank, Akron v. Donaldson (1994), 95 Ohio App.3d 241,245.
 When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will be not be admitted for the purpose of varying or contradicting the writing.
Natl. City Bank, Akron v. Donaldson, 95 Ohio App.3d at 245, quoting 3 Corbin, Corbin on Contracts (1960), 357, Section 573. (Emphasis added.) See, also, Burton, Inc. v. Durkee (1952),158 Ohio St. 313, paragraph two of the syllabus.
The threshold question where there is a written agreement between two parties and allegations of one or more other agreements between the same parties is whether the written agreement is the complete and unambiguous understanding of the parties. National City Bank, Akron v. Donaldson,95 Ohio App.3d at 245. A subsequent written document does not supersede terms in a preceding agreement unless the subsequent agreement evidences an intent to do so. TRINOVA Corp. v. Pilkington Bros., P.L.C.,70 Ohio St. 3d at 277.
The written agreement at issue in the case before us contains no integration clause or other language establishing that the written agreement was the complete understanding of the parties. See Wall v. Firelands Radiology, Inc. (1995), 106 Ohio App.3d 313,324-325. Moreover, the actions between the parties as demonstrated by the record raise questions as to whether the written agreement was intended to supersede the oral agreement.
Figetakis testified that the purpose of the loan agreement was to protect his right to recover his $30,000 principal amount from Smith's estate in the event of Smith's death and that, despite executing the loan agreement, he continued to believe he was in partnership with Smith. Smith testified that he "agreed to give Nick 25 percent of whatever I took out of the business in consideration of the fact that he loaned me $30,000." Since Smith has not repaid the $30,000, and since the $30,000 would earn no interest under the agreement, a fact finder could reasonably conclude that even Smith did not consider the written agreement to be the entire understanding of the parties. Viewing this evidence as we must in favor of Figetakis, the party not moving for summary judgment, there is an issue of material fact as to whether the loan agreement was the complete embodiment of the parties' understanding.
Moreover, the evidence before the trial court raises at the least a material question as to whether the oral agreement continued to be performed, thus remaining in effect, after the written agreement was executed. Smith testified that he wrote to Figetakis on January 9, 1995, nearly four weeks after the written agreement was signed by the parties, stating that he was terminating their "informal business agreement" and that "[a]ll business profits will be distributed to the both of us using the agreed upon formula prior to the 15th."
The case before us differs from Marion Prod. Credit Assn. v.Cochran (1988), 40 Ohio St.3d 265, relied on by the defendants, in two major respects. First, unlike the plaintiffs in Marion, there is an issue of material fact as to whether Figetakis is seeking tocontradict a term in a fully integrated contract with evidence of an oral promise. We cannot conclude as a matter of law on the facts before us that an oral promise to share in profitscontradicts a later written provision in a written agreement that requires no payment of interest. Second, the oral promises alleged in Marion were made prior to execution of a written agreement containing contradictory terms. Here, it appears that the parties may have acted in accordance with the oral agreement even subsequent to the execution of the written agreement.
Accordingly, the trial court should not have granted summary judgment for Smith on the breach of contract and accounting claims.
With respect to 1964, Inc., the record suggests that Smith may not have been acting solely in his own behalf with respect to Figetakis but also as an officer of 1964, Inc. Figetakis made his checks payable to 1964, Inc. His contributions and profits were held in a 1964, Inc. account, and 1964, Inc. held the franchise for the business. Accordingly, summary judgment should not have been granted for 1964, Inc. on the breach of contract and accounting claims.
With respect to Demetra Smith, none of the evidence in the record indicates that she was a party to any agreement or that she was an officer or shareholder of 1964, Inc. As defendants pointed out in their motion for summary judgment, Figetakis testified that he "assumed" that the Smiths were co-owners of the business but could not recall Demetra Smith having any discussions with him relative to his contribution to the business. Accordingly, summary judgment was properly granted for Demetra Smith on the breach of contract and accounting claims.
 (2)
Figetakis also alleged in his complaint that Hesske, Smith, and 1964, Inc. conspired in the drafting of the loan agreement "with the apparent intent of characterizing a business investment, partnership interest, or shareholders interest as a loan." In granting summary judgment to Hesske, Smith, and 1964, Inc. on this claim, the court determined that there was "no language within the complaint to establish a claim of civil conspiracy * * *."
A civil conspiracy claim brought in Ohio consists of: "(1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." Universal Coach, Inc. v.New York City Transit Auth., Inc. (1993), 90 Ohio App.3d 284,292.
A plaintiff is not required to plead with particularity every element of a claim of civil conspiracy. Id. Moreover, Hesske, Smith, and 1964, Inc., as the parties seeking summary judgment, bore the initial burden of informing the trial court of the basis for their motion, and identifying those portions of the record that demonstrated the absence of a genuine issue of material fact on the essential elements of the conspiracy claim.Vahila v. Hall, 77 Ohio St.3d at 429. Neither Smith, 1964, Inc., nor Hesske moved for summary judgment with respect to the civil conspiracy count nor identified anything in the record to support a conclusion that Figetakis could not prove this claim. Accordingly, summary judgment was improperly granted for Smith, Hesske, and 1964, Inc. on this count.
With respect to an alleged conspiracy between the Smiths against Figetakis, Demetra Smith argued in her motion for summary judgment that Figetakis's testimony failed to link her in any way to either the alleged oral partnership agreement or to the written loan agreement. Figetakis failed to contradict her evidence in opposing her motion. Accordingly, summary judgment was properly granted for Demetra Smith on the conspiracy count.
 (3)
Figetakis next argues that the trial court erred in granting summary judgment for Smith because there was evidence of a breach of fiduciary duty on Smith's part: (a) arising from the existence of the partnership agreement between Figetakis and Smith and (b) because of Smith's knowledge of Figetakis's "mental problems."
Because the trial court apparently concluded that the written agreement between the parties for the repayment of the $30,000 was the only remaining viable agreement between the parties, it did not reach the claim of breach of fiduciary duty arising from an oral partnership agreement. Based on our conclusion that issues of material fact remain as to whether the written agreement superseded the oral agreement or whether the oral agreement continued, and based on questions as to whether the oral agreement created a partnership, the claim for breach of fiduciary duty with respect to a partnership agreement also remains. "A breach of fiduciary duty among partners is actionable at law." Dunn v.Zimmerman (1994), 69 Ohio St.3d 304, syllabus.
With respect to Figetakis's claim that the defendants breached a fiduciary duty to him by "overcoming his will" in obtaining his signature on the loan agreement, defendants pointed to the ample testimony in the record that Figetakis was presented with the loan agreement, was instructed to read it carefully, and was encouraged to ask questions if he had any. Figetakis admitted reading the agreement, admitted asking no questions, and admitted signing the agreement even though he had questions about it. Figetakis testified as to the nature of his bipolar disorder but described nothing that would have rendered him incompetent to contract.
Accordingly, summary judgment was properly granted for the defendants on the count of breach of fiduciary duty on the basis of incompetency to contract.
 (4)
Figetakis next argues that summary judgment was improper because there was evidence that Smith defrauded Figetakis by having Hesske prepare the loan agreement, while knowing it was contrary to the oral agreement between Figetakis and Smith. Figetakis did not plead fraud in his complaint, nor did the trial court address a claim of fraud in granting summary judgment for the defendants.
Fraud must be pleaded with particularity in accordance with Civ.R. 9(B). Accordingly, the trial court was not required to address a claim of fraud. Pursuant to App.R. 12(A), appellate review is limited to the record as it existed at the time the judgment was rendered. McKay v. Cutlip (1992), 80 Ohio App.3d 487,490, fn. 3. Accordingly, Figetakis's claim of fraud is not properly before this court.
Figetakis's first assignment of error is sustained insofar as the trial court erred in granting summary judgment for Smith and for 1964 on the breach of contract, accounting, and breach of fiduciary duty with respect to partnership claims, and for Smith, 1964, and Hesske on the civil conspiracy claims. Figetakis's first assignment of error is overruled with respect to the grant of summary judgment on all claims brought against Demetra Smith, on all breach of fiduciary duty claims with respect to Figetakis's competence, and on all fraud claims.
 II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF CONSTANCE A. HESSKE AS THERE WERE GENUINE ISSUES OF MATERIAL FACT AND SAID APPELLEE WAS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.
In his complaint, Figetakis alleged that Hesske committed legal malpractice through a conflict of interest arising by her representing him, Smith, and 1964, Inc. Specifically, Figetakis maintained that Hesske prepared a will for him, naming Smith as executor with power "to settle and adjust all claims and demands in favor of or against my estate" and that she drafted the loan agreement while representing Smith, 1964, Inc., and Figetakis.
Hesske argued in her motion for summary judgment that, even if there was a conflict of interest, both parties waived it when they signed the agreement. She also pointed to Figetakis's deposition in which he admitted that Hesske told him to read the document before signing it and that she would answer any questions he had. Relative to her preparation of the loan agreement, Hesske's affidavit attached to her motion states:
* * *
 9. I did not represent Nick Figetakis or D. Lawrence Smith in any loan agreement negotiations.
 10. I prepared a generic loan agreement for Nick Figetakis and D. Lawrence Smith to sign from information supplied to me by both parties.
 11. I did not bill nor receive any compensation from either party for this document.
Figetakis testified with respect to Hesske's involvement that a few weeks prior to her presenting him with the loan agreement she had prepared his will. With respect to the loan agreement, "She did not say who she was representing, if she was representing anyone." Smith, in his deposition, identifies Hesske as Figetakis's attorney. He also states, however, that he asked Hesske to "draw up a document" but "didn't instruct her as to what to do."
In granting summary judgment to Hesske on this claim, the trial court concluded that Figetakis had failed to establish a conflict of interest.
In his second assignment of error, Figetakis maintains there is an issue of material fact as to his conflict of interest claim against Hesske. He claims that Hesske's affidavit states that both Smith and Figetakis asked her to prepare the loan agreement, while Smith testified that he alone "asked her to draw up [the] document." The record demonstrates that Hesske prepared a will for Figetakis in December 1994 and that she previously represented another company with which Smith was affiliated.
In a claim for legal malpractice, a plaintiff must show "(1) an attorney-client relationship giving rise to a duty, (2) a breach of that duty, and (3) damages proximately caused by the breach." Krahn v. Kinney (1989), 43 Ohio St.3d 103, syllabus;Adhesive Impressions, Inc. v. Amer, Cunningham Brennan Co.,L.P.A. (1993), 89 Ohio App.3d 532, 535.
The record before the trial court was inconclusive as to the first element of a claim for legal malpractice; that is, whether there was an attorney-client relationship between Figetakis and Hesske regarding the loan agreement. Hesske denies representing either Figetakis or Smith in loan negotiations, but claims that she prepared the loan agreement at the behest of both parties. Not only does Hesske fail to disclaim an attorney-client relationship with Figetakis regarding preparation of the loan agreement, Smith identified Hesske as Figetakis's attorney. Moreover, there is no evidence that Figetakis and Smith waived dual representation. At a minimum, there was an issue of material fact as to the nature of the relationship between Figetakis and Hesske.
As the party moving for summary judgment, it was Hesske's burden to identify those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of Figetakis's malpractice claim. See Vahila v. Hall,77 Ohio St. 3d at 429-30. Since Hesske failed to meet her burden, no reciprocal burden arose requiring Figetakis to respond by showing that there are genuine issues of material fact to be tried. Id.
Accordingly, the trial court erred in granting summary judgment for Hesske on the claim of malpractice. Figetakis's second assignment of error is sustained.
 III. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF JEROME L. HOLUB AND ALICE L. HONEYCUTT AS THERE WERE GENUINE ISSUES OF MATERIAL FACT AND SAID APPELLEES WERE NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.
Figetakis alleged in his complaint that Hesske was acting in the scope of her employment with Holub when she committed legal malpractice. Accordingly, he attempts to hold Holub responsible under a theory of respondeat superior for legal malpractice and for the alleged conspiracy against him. Figetakis also named Holub as a defendant because he signed the loan agreement as a witness. Figetakis named Honeycutt as a defendant, alleging that she was acting in the scope of her employment with Holub when she attested to his and Smith's signatures on the loan agreement.
Figetakis stated by affidavit that the only parties present when the loan agreement was presented to him for signature were the Smiths and Hesske. In Hesske's affidavit attached to her motion for summary judgment, she stated that she was employed by Holub but that she also maintained a practice separate from Holub, and that at no time were either Smith or Figetakis ever clients of Holub or his law firm. She argued that the signatures of Holub and Honeycutt were rendered irrelevant because Figetakis admitted that he signed the agreement. Figetakis failed to contradict Hesske's affidavit regarding Holub and Honeycutt. The trial court, relying on Hesske's affidavit and argument, granted summary judgment for Holub and Honeycutt.
On appeal, Figetakis asserts for the first time that the appearance of Hesske's name on Holub letterhead raises an issue of material fact as to whether she was an employee of Holub. Since Figetakis failed to raise this issue in his response to Holub and Honeycutt's motion for summary judgment when the trial court could have responded to it, we need not address it on appeal. Mumfordv. Interplast, Inc. (May 23, 1997), Darke App. No. 1419, unreported, citing State v. Peagler (1996), 76 Ohio St.3d 496,499.
Since Hesske's affidavit establishes that neither Smith nor Figetakis was a client of Holub's and since Figetakis failed to demonstrate how the signatures of Holub and Honeycutt were relevant to the agreement, the trial court properly granted summary judgment for Holub and Honeycutt.
Figetakis's third assignment of error is overruled.
The decision of the trial court is affirmed in part and reversed in part. This cause is remanded for further proceedings consistent with this opinion.
Judgment affirmed in part, reversed in part, and causeremanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
 Exceptions. _______________________________ WILLIAM R. BAIRD
FOR THE COURT
REECE, J.
DICKINSON, J. CONCUR.