{¶ 47} I respectfully dissent from the decision of the majority.
 {¶ 48} The principle of "[c]ontract integration provides that where the parties' intent is sought to be ascertained from several writings, a prior writing will be rejected in favor of a subsequent one if the latter writing contains the whole of the parties' agreement. If the subsequent agreement is complete and unambiguous on its face, parol evidence is inadmissible to show a contrary intent of the parties." Trinova Corp. v. PilkingtonBros. (1994), 70 Ohio St.3d 271, Syllabus by the Court. Further, with respect to the completeness of the subsequent agreement, "a subsequent agreement does not supercede or modify unambiguous terms in a preceding contract unless the subsequent agreement specifically evidences an intent to do so." Id., at 277.
 {¶ 49} A "contingency" is an event that may or may not occur. In contracts for the sale of real property, contingent events typically are identified which, upon their failure to occur, operate to relieve the parties of their mutual promises in the contract, the seller's promise to sell and the purchaser's promise to buy. In that respect, such contingencies (e.g., inspections, financing, closing dates) are conditions subsequent which terminate a party's prior duty to otherwise perform as promised.
 {¶ 50} The first contract expressly provided that the buyers would need to obtain 100% financing, on which the contract was contingent, and that the "contingency period will end when buyer provides the seller with a copy of the acceptance letter from the buyer's lending institution." In effect, such a presentation would satisfy the condition subsequent that the buyer be able to obtain 100% financing, requiring both the buyer and the seller then to perform as promised.
 {¶ 51} In the second agreement, which specifies a lower purchase price consistent with what the buyers believed they could finance, the parties agreed that "[t]he purchasers shall obtain financing in the amount of $199,900.00 to be paid to the (sellers) on the date of closing." The issue is whether that provision modified or superceded the contingency/condition subsequent in the prior written agreement.
 {¶ 52} The trial court found: "If financing was intended to be a contingency, then such a common contingency would have been drafted into the (second) agreement. Instead, the contract plainly states what the court finds to be the intentions of the parties i.e., that the financing was the duty of the Defendants." (Judgment Entry 3/21/05, at p. 4).
 {¶ 53} The trial court's analysis found the lack of an intention to impose a financing contingency in the second agreement because, unlike in the first contract, none was stated in the second. However, the rule of Trinova requires a subsequent agreement to "specifically evidence" an intent to supercede or modify an unambiguous term of the prior agreement in order for the subsequent agreement to be complete and, therefore, the whole of the parties' agreement. The trial court misapplied the principle of contract integration and, instead, should have read the two writings together in order to determine the intentions of the parties vis-vis the financing contingency.
 {¶ 54} From these two writings, as well as the course of the parties' dealings, it is apparent that they intended the buyers would not be bound to perform on their promise to purchase unless the buyers obtained 100% financing. The second agreement merely lowered the amount the buyers were expected to finance, consistent with what their prospective lender had told them. That agreement does not specifically evidence an intent to waive the condition subsequent pertaining to financing the first agreement unambiguously imposed. Therefore, the condition subsequent likewise applies with respect to the $199,900 the buyers promised in the second agreement to pay. Not being able to obtain financing in that amount, the buyers are relieved of their promise to purchase, and are not liable for damages the sellers incurred as a result of the buyers' failure to perform.
 {¶ 55} I would reverse and vacate the trial court's judgment for the sellers.
* * * * * * * * *
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio