[Cite as *Amarado Oil Co., Ltd. v. W.P. Brown Ents., Inc.*, 2015-Ohio-4152.]

STATE OF OHIO, NOBLE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| AMARADO OIL COMPANY, LTD., | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| V. | ) | |
| | ) | CASE NO. 14 NO 416 |
| W.P. BROWN ENTERPRISES, INC., | ) | |
| | ) | OPINION |
| DEFENDANT, THIRD-PARTY | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| LEONARD C. HARBAUGH, ET AL., | ) | |
| | ) | |
| THIRD-PARTY | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from Court of Common Pleas of Noble County, Ohio Case No. 212-0203

JUDGMENT: Affirmed

JUDGES:

Hon. Gene Donofrio
Hon. Mary DeGenaro
Hon. Carol Ann Robb

Dated: September 30, 2015

APPEARANCES:

For Plaintiff-Appellee      Attorney Frank J. Witschey
                405 Rothrock Rd., Suite 103
                Akron, Ohio 44321

For Defendant-Appellant      Attorney Richard A. Yoss
W.P. Brown Enterprises, Inc.     Attorney Todd J. Abbott
                122 N. Main St.
                Woodsfield, Ohio 43793

                Attorney Richard A. Baker
                819 Steubenville Avenue
                Cambridge, Ohio 43725

For Defendant-Appellee      Attorney William H. Ferguson
Leonard C. Harbaugh, et al.     111 N. 7th St.
                Cambridge, Ohio 43725

DONOFRIO, P.J.

{¶1} Defendant/Third-Party Plaintiff-Appellant W.P. Brown Enterprises, Inc. appeals a decision of the Noble County Common Pleas Court awarding summary judgment in favor of Plaintiff-Appellee Amarado Oil Company, Ltd., Third-Party Defendants-Appellees Leonard and Anita Harbaugh, and Third-Party Defendant-Appellee Donald Gadd d.b.a Ohio Valley Oil Company, Ltd., in a dispute over the oil and gas rights to premises owned by Appellees Harbaugh. Appellant Brown also appeals a contemporaneous decision of the trial court denying its Civ.R. 60(B) motion for relief from that award of summary judgment.

{¶2} Phyllis and Edward Hively owned 94 acres of real property in Noble County situated at 53167 State Route 146, Pleasant City, Ohio (the premises). In 1975, the Hivelys executed an oil and gas lease covering the premises with the Benatty Corporation (the 1975 Lease). The 1975 Lease had a primary term of two years and a secondary term to "extend long [sic] thereafter as oil and gas, or either of them, is produced by lessee from said land or from a communized unit as hereinafter provided." Only one well, known as the Hively Well, was drilled on the premises pursuant to the lease. Through a series of assignments originating from the Benatty Corporation, the "lessee's interest" or "working interest" in the 1975 Lease was transferred to the Equity Oil Company (Equity Oil).

{¶3} In 1993, the Hivelys sold the premises to Third-Party Defendants-Appellees Leonard and Anita Harbaugh (Appellees Harbaugh). Phyllis Hively contemporaneously assigned the 1975 Lease to Appellees Harbaugh. By then, though, the Hively Well had ceased commercial production due to a break in the transmission line located in a landfill on adjoining property and was providing gas for domestic purposes only. Meanwhile, Equity Oil had contracted with Defendant/Third-Party Plaintiff-Appellant W.P. Brown Enterprises, Inc. (Appellant Brown) to maintain the Hively Well.

{¶4} In 1997, Equity Oil assigned its interest in the 1975 Lease to Appellant Brown. Initially, Appellant Brown contemplated plugging the well and salvaging the equipment from the well for use at another site. Appellees Harbaugh expressed

interest in buying the well and Appellant Brown offered to sell it for $12,500. Following negotiations, they reached a reduced purchase price of $2,500.

{¶5} Pursuant to the sale, Appellant Brown made a partial assignment of its interest in the 1975 Lease to Appellees Harbaugh in December 1997 (the 1997 Assignment). Appellant Brown assigned the well and its "working interest" in the 40 acres surrounding the well to Appellees Harbaugh. Also, in the assignment, Appellant Brown expressly reserved rights to all formations below the Medina Formation and all formations down to and 100 feet past the Berea Formation, referred to by the parties as the deep rights. The 1997 Assignment did not address the remaining 54 acres of the premises.

{¶6} In 2011, Appellant Brown approached Third-Party Defendant-Appellee Donald Gadd d.b.a Ohio Valley Oil Company, Ltd. about having him market and sell various oil and gas leasehold interests it held, including the leasehold interest in the deep rights that it perceived that it had in the premises of Appellees Harbaugh. Appellee Gadd/OVOC agreed and Appellant Brown and Appellee OVOC executed a "Term Assignment of Oil, Gas and Mineral Leases" and an "Order of Payment" in furtherance of the agreement to have Appellee OVOC market and sell Appellant Brown's purported leasehold interest in the premises owned by Appellees Harbaugh.

{¶7} Meanwhile, in an attempt to buttress its purported leasehold interest in the premises owned by Appellees Harbaugh, Tim Brown, vice president of Appellant Brown, filed an "Affidavit of *Non*-forfeiture" pursuant to R.C. 5301.332 relating to the 1975 Lease. (Emphasis added.) R.C. 5301.332 sets forth the non-judicial procedure for terminating and/or challenging old oil and gas leases, commonly referred to as the lease forfeiture process. Specifically, the lease forfeiture process is the statutory method for removing leases from a landowner's chain of title where the lessee fails to abide by the specifically described covenants in the lease or because the lease expired by its own terms.

{¶8} After the first potential buyer Appellee OVOC approached with Appellant Brown's leases rejected them, Appellee Gadd met with Appellees

Harbaugh in an attempt to obtain a ratification of the 1975 Lease. They were upset at the request and referred him to their attorney. Appellee Gadd met with their attorney and he was of the opinion that there was not a valid lease on the premises.

**{¶9}** In March 2012, Appellees Harbaugh executed an oil and gas lease covering their entire 94 acres at all depths with Plaintiff-Appellee Amarado Oil Company, Ltd. (Appellee Amarado). In response to the "Affidavit of Non-forfeiture" filed on behalf of Appellant Brown, Appellee Amarado sued Appellant Brown to quiet title. Appellant Brown answered and set forth a counterclaim and third-party complaint. The counterclaim against Appellee Amarado and third-party complaint against Appellees Harbaugh was likewise to quiet title. Appellant Brown also included a third-party complaint against Appellee Gadd/OVOC for breach of fiduciary duty. Appellee Amarado, Appellee Gadd/OVCC, Appellees Harbaugh each answered Appellant's counterclaim and third-party complaint with Appellees Harbaugh filing a counterclaim of their own against Appellant Brown and joining with Appellee Amarado to quiet title.

**{¶10}** The case proceeded to discovery including the depositions of Appellee Anita Harbaugh, Appellee Leonard Harbaugh, Appellee Donald Gadd, and Tim Brown on behalf of Appellant Brown. Following discovery, Appellee Amarado and Appellees Harbaugh each filed separate but similar motions for summary judgment. Appellee Gadd/OVOC likewise filed a summary judgment motion. The trial court set a hearing for the motions for February 10, 2014. Appellant Brown filed its memorandum and supporting materials in opposition on the date set for the hearing.

**{¶11}** In a decision filed on March 26, 2014, the trial court granted summary judgment and quieting title in favor of Appellee Amarado and Appellees Harbaugh. The court found that the 1975 Lease had expired by its own terms due to non-production. The trial court also awarded summary judgment in favor of Appellee Gadd/OVOC and dismissed all of the claims set forth in Appellant Brown's counterclaim and third-party complaint. Although the trial court noted that Appellant Brown's memorandum in opposition filed on the date set for the hearing of the

summary judgment motions was untimely, it stated that had it considered the memorandum and attached materials, "the outcome would be no different."

{¶12} On April 3, 2014, Appellant Brown filed a motion for relief from judgment pursuant to Civ.R. 60(B), principally arguing that the trial court should have considered its memorandum in opposition and supporting materials and find that it had entered into a new agreement, or novation, with Appellees Harbaugh by virtue of the 1997 Assignment. The trial court overruled and denied Appellant Brown's motion for relief from judgment on April 15, 2014. The court again noted that it had considered all of the pleadings, including Appellant Brown's memorandum in opposition, in ruling on the summary judgment motions. It noted that it had discounted Appellant Brown's novation argument, concluding that the 1997 Assignment unambiguously reserved only those rights which it had stemming from the 1975 Lease and did not serve to act as a conveyance, in fee, of oil and gas to it. Appellant Brown filed a notice of appeal directed to both decisions of the trial court – its March 26, 2014 summary judgment decision and its April 15, 2014 motion for relief from judgment decision.

*Standard of Review*

{¶13} Appellant Brown's sole assignment of error is directed at the trial court's decision on the summary judgment motions.[1] The last decision the trial court issued on this matter concerned Appellant Brown's Civ.R. 60(B) motion for relief from judgment of the trial court's decision on the summary judgment motions. However, due to the trial court's expeditious consideration of that motion within 30 days of its decision on the summary judgment motions and Appellant Brown's timely appeal of both decisions, this court can proceed to review the matter under the summary judgment standard of review.

{¶14} An appellate court reviews a trial court's summary judgment decision anew, applying the same standard used by the trial court. *Ohio Govt. Risk Mgt. Plan*

---

1. Appellant Brown's appellate brief initially set forth two assignments of error. However, on July 29, 2015, Appellant Brown filed a notice of withdrawal its second assignment of error.

*v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 5.  A motion for summary judgment is properly granted if the court, upon viewing the evidence in a light most favorable to the nonmoving party, determines that: (1) there are no genuine issues as to any material facts; (2) the movant is entitled to judgment as a matter of law; and (3) the evidence is such that reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. Civ.R. 56(C); *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10.

**{¶15}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996).  The trial court's decision must be based upon "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." Civ.R. 56(C).  The nonmoving party has the reciprocal burden of specificity and cannot rest on the mere allegations or denials in the pleadings. *Id.* at 293.

**{¶16}** Summary judgment is appropriate when there is no genuine issue as to any material fact.  A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202. (1986)

*Novation*

**{¶17}** Appellant Brown's sole assignment of error states:

> On motion for summary judgment the trial court erred in ignoring the clear language of the 1997 Assignment/Agreement signed and recorded by Appellees Harbaugh wherein Appellant was to have, inter alia, the deep rights under 94 acres and Appellees Harbaugh were to have free gas, own the Hively well (which would not then be plugged), and 40 acres of described unit strata for only $2,500, a reduction of

$10,000 from the original asking price.

**{¶18}** Appellant Brown essentially concedes what it terms as the "probable" expiration of the 1975 Lease. After determining that "resurrecting" the lease and the cost of replacing the broken transmission line was prohibitive, Appellant Brown states that it was left with the decision to plug the well and salvage the well equipment which would have left it with an estimated net profit of between $12,000 and $14,000. Instead, Appellant Brown argues that it reached a new agreement (i.e., a novation) with Appellees Harbaugh embodied in the 1997 Assignment. Appellant Brown argues that the trial court failed to consider events that occurred after the "probable" expiration of the 1975 Lease and which prove that the 1997 Assignment was a novation.

**{¶19}** In particular, Appellant Brown focuses on the reduced purchase price the parties agreed upon. Appellant Brown contends that it initially offered to sell the Hively Well to Appellees Harbaugh for $12,500. Upon learning that Appellees Harbaugh could not afford that price, Appellant Brown maintains that it lowered the asking price by $10,000 to $2,500 in exchange for Appellees Harbaugh assigning to it the deep rights to all 94 acres of the premises.

**{¶20}** "A contract of novation is created where a previous valid obligation is extinguished by a new valid contract, accomplished by substitution of parties or of the undertaking, with the consent of all the parties, and based on valid consideration." *Williams v. Ormsby,* 131 Ohio St.3d 427, 2012-Ohio-690, 966 N.E.2d 255, ¶ 18. A "novation can never be presumed but must be evinced by a clear and definite intent on the part of all the parties to the original contract to completely negate the original contract and enter into the second." *Id.*

**{¶21}** Further, "[b]ecause a novation is a new contract, it too must meet all the elements of a contract." *Id.* at ¶ 19. "Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Kostelnik v. Helper,* 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58,

¶ 16.

**{¶22}** In construing any written instrument, the primary objective is to ascertain the parties' intent. *Aultman Hosp. Assn. v. Hosp. Care Corp.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989). The first step is to determine whether the disputed language of the instrument can be characterized as plain and unambiguous. The language is unambiguous if, from reading only the four corners of the instrument, the language is clear, definite, and subject to only one interpretation. The language is ambiguous if it is unclear, indefinite, and reasonably subject to dual interpretations or is of such doubtful meaning that reasonable minds could disagree as to its meaning.

**{¶23}** When the language of the written instrument is clear and unambiguous, the interpretation of the instrument is a matter of law, and the court must determine the intent of the parties through only the language employed. *Davis v. Loopco Indus., Inc.*, 66 Ohio St.3d 64, 66, 609 N.E.2d 144 (1993) (if a contract is clear and unambiguous, then its interpretation is a matter of law, and there is no issue of fact to be determined). In such cases, the court may not resort to extrinsic or parol evidence. In other words, when a written instrument is unambiguous, intentions not expressed by writing in the contract are deemed to have no existence and cannot be shown by parol evidence. *TRINOVA Corp. v. Pilkington Bros., P.L.C.*, 70 Ohio St.3d 271, 275, 638 N.E.2d 572 (1994).

**{¶24}** When the language is ambiguous, there arises a factual question, and the court may consider extrinsic or parol evidence to ascertain the intent behind the language. *Davis,* 66 Ohio St.3d at 66, 609 N.E.2d 144. When the court finds ambiguity in a contract such that it is necessary to resort to extrinsic evidence to determine intent, intent becomes a factual question for the trier of fact. *Id.*

**{¶25}** Here, the 1997 Assignment does not constitute or have the legal effect of a novation. On its face, it is simply an assignment of interests stemming from the 1975 Lease and nothing more. It was not a new agreement conveying oil and gas rights from Appellees Harbaugh to Appellant Brown as Appellant Brown purports it to be. It states:

"KNOW ALL MEN BY THESE PRESENTS, that the undersigned W.P. Enterprises, Inc., of 57051 Marietta Road, Byesville, Ohio 43723, hereinafter called *Assignor*, for and in consideration of One Dollar ($1.00) the receipt and sufficiency of which is hereby acknowledged, does hereby sell, assign, transfer, and convey unto Leonard C. and Anita L. Harbaugh, husband and wife, of 53167 SR 146, Pleasant City, Ohio 43772, hereinafter called *Assignee*, all rights, title, and interest that the *Assignor* now owns in and to the oil and gas lease described below [i.e., the 1975 Lease], including any interest that the *Assignor* now owns in and to the oil and gas well existing on such lease."

(Emphasis sic.)

{¶26} The 1997 Assignment did not constitute a novation; it was only an assignment of the interest that Appellant Brown had in the oil and gas rights on the premises at that time. Appellant Brown is clearly designated as the assignor and Appellees Harbaugh as the assignee. At no point in the assignment do Appellees Harbaugh "sell, assign, transfer, and convey unto" Appellant Brown any interest; let alone a new, severed mineral estate independent of the 1975 Lease. Rather, Appellant Brown assigned the well and its "working interest" in the 40 acres surrounding the well to Appellees Harbaugh. Also, Appellant Brown expressly reserved whatever interest it had in the deep rights at that time. The assignment did not address the remaining 54 acres of the premises.

{¶27} The assignment clearly refers to what Appellant Brown "now owns" in the 1975 Lease. In other words, the rights it expressly reserved in the assignment were only those rights that it had at that time. Thus, given that the assignment clearly does not constitute a novation, the only remaining determination is what interest Appellant Brown had in the 1975 Lease at the time of the 1997 Assignment.

{¶28} As indicated, Appellant Brown essentially concedes that the 1975 Lease had probably terminated. Indeed, it had. The primary lease term of two years had long expired. The secondary term was to "extend long [sic] thereafter as oil and

gas, or either of them, is produced by lessee from said land or from a communized unit as hereinafter provided." The Hively Well had ceased commercial production even before Appellees Harbaugh purchase of the premises in 1993 and was used at the time of the assignment only for domestic consumption. Domestic consumption does not constitute production so as to extend the secondary term of an oil and gas lease. *Morrison v. Petro Evaluation Serv., Inc.*, 11th Dist. No. 2004 CA 0004, 2005-Ohio-5640. Thus, the 1975 Lease had expired and Appellant Brown did not retain any interest in the deep rights at the time of the 1997 Assignment.

{¶29} Accordingly, Appellant Brown's sole assignment of error is without merit.

{¶30} The judgment of the trial court is affirmed.

DeGenaro, J., concurs.

Robb, J., concurs.