Nelida LOPEZ, Plaintiff

v.

AMERICAN FAMILY INSURANCE COMPANY, et al., Defendants

Case No.: 1:12 CV 2229

United States District Court, N.D. Ohio, Eastern Division.

Signed March 31, 2014

Sarah B. Baker, Tricia L. Pycraft, Timothy B. Pettorini, Critchfield, Critchfield & Johnston, Wooster, OH, for Plaintiff.

Denise M. Hasbrook, Emily Ciecka Wilcheck, Robert E. Blackham, Roetzel & Andress, Toledo, OH, Timothy B. Pettorini, Critchfield, Critchfield & Johnston, Wooster, OH, for Defendants.

## ·ORDER

SOLOMON OLIVER, JR., CHIEF JUDGE UNITED STATES DISTRICT COURT

Currently pending before the court in the above-captioned case between Plaintiff Nelida Lopez ("Lopez" or "Plaintiff") and Defendant American Family Mutual Insurance Company, Defendant American Family Life Insurance Company, and Defendant American Standard Insurance Company of Wisconsin (collectively, "American Family" or "Defendants") is Defendants' Motion for Summary Judgment (ECF No. 27). For the following reasons, the court grants Defendants' Motion for Summary Judgment (ECF No. 27).

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural Background

On or about September 16, 2010, Lopez filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Compl. at 28, ECF No. 1.) After receiving a notice of right to sue from the Equal Employment Opportunity Commission ("EEOC"), Plaintiff filed the instant Complaint (ECF No. 1). In her Complaint, Plaintiff pleads: (1) a Title VII claim, alleging race discrimination; (2) race discrimination under Ohio law; (3) an Age Discrimination in Employment Act ("ADEA") claim; (4) age discrimination under Ohio Law; (5) breach of Ohio Public Policy; and (6) intentional infliction of emotional distress under Ohio law. On May 22, 2013, Defendants filed this Motion for Summary Judgment (ECF No. 27) on all of Plaintiff's claims.

### B. Factual Background

#### 1. Employment History of Lopez and Realignment Process

This case arises from Plaintiff's employment relationship with American Family,

an insurance company that entered the Ohio market in 1995. (Pl.'s Mot. in Opp'n at 1, ECF No. 35.). Plaintiff worked as an employee of American Family in the position of District Manager from 2006 until she was terminated in March of 2010. ( Lopez Dep. at 11, 49.) Prior to becoming an employee of American Family, Plaintiff was an independent agent of the company from 2001, until she was promoted to District Manager in 2006. (*Id.* at 11.)

In January or February of 2009, Plaintiff was told by American Family that there would be a realignment and as a result fewer district manager positions would be available. (*Id.* at 50-51.) American Family informed its Ohio District Managers, including Plaintiff that it intended to implement an Reduction in Force ("RIF") to reduce the number of Ohio district managers from thirteen to eight or nine. (*Id.* at 57-58; Jackson Dep. at 67.) As part of this RIF, American Family implemented an interview process to determine which District Managers would retain a district manager position after the realignment and gave all Ohio District Managers an opportunity to participate in the interview process. (Lopez Dep. at 73, 82-83; Jackson Dep. at 77.) Those District Managers who chose to opt out of the interview process were given the opportunity to pursue agency opportunities or other available employment opportunities with American Family. (Lopez Dep. at 73-74.) The District Managers who chose to participate in the interview process, including Plaintiff, were told that the individuals not selected for the restructured positions would be given until March 31, 2010 to find other opportunities with American Family at which time their employment would be severed. (*Id.* at 74-76.) Two District Managers chose to opt out of the interview process leaving Plaintiff as one of eleven potential candidates for the restructured district manager positions. (*Id.* at 79-80; Steffen Dep. at 71; Jackson Dep. at 78.)

The selection process for the restructured district manager positions did not focus on past performance. Instead, it focused on the candidates' interview performance, including their business plans for the future. (Lacey Dep. at 39, 42; Steffen Dep. at 61, 65; Jackson Dep. at 85-87.) An interview template was developed to ensure consistency in the interview process and each candidate was asked the same behavior-based questions and was required to make a presentation of his or her business plan. (Jackson Dep. at 75, 81-83, 91, 94-95; Lopez Dep. at 83, 85, 89.) While Plaintiff, a Hispanic, was the only racial minority to interview for one of the restructured positions, she admits that she received the same instructions and opportunity to interview as all other candidates. (Steffen Dep. at 69-70; Jackson Dep. at 110; Lopez Dep. at 82-83, 89.) Both interviewers, La Tunja Jackson ("Ms. Jackson") and Deborah Lacey ("Ms. Lacey"), used a standardized scoring process, discussed each applicant, and reached a consensus prior to any reporting to ensure consistency. (Jackson Dep. at 84-85, 128; Lacey Dep. at 56.) Lopez scored the lowest of all District Managers during the interview process. (Jackson Dep. at 107-08, Ex. 6.) As a result, neither Lopez nor Stephen Graham ("Mr. Graham"), the candidate with the second lowest score, were selected for the restructured district manager positions. (Lopez Dep. at 165-66; Jackson Dep. at 108, 131, Ex. 6.)

### 2. Plaintiff's Qualifications for District Manager Position

Plaintiff was a well-performing agent which led to her promotion to District Manager in 2006. (Jackson Dep. at 45-47.) As District Manager, Plaintiff received the highest annual bonus of all the district managers for 2009. (Steffen Dep. at 64.) Additionally, Plaintiff had the second most profitable district for 2009 of all the dis-

trict managers that interviewed for the restructured district manager positions. (Jackson Dep. Ex. 18, 19.)

### 3. Agency Opportunities

After not being selected for a restructured district manager position, Mr. Graham was offered and accepted a position as an agent for American Family in Columbus, Ohio. (Lopez Dep. at 166, Jackson Dep. at 132-33.) Similarly, Plaintiff was offered a position as an agent at the end of February 2010 to take over the agency of Hans Hansen. (Lopez Dep. At 116-18, 132-33; Steffen Dep. at 85; Jackson Dep. at 140, 149.) However, Plaintiff rejected this offer on March 2, 2010, to pursue another opportunity with American Family in Arizona. (Lopez Dep. 118-120; Steffen Dep. at 85; Jackson Dep. at 146, 169, 181, 195.) On March 2, 2010, after rejecting the Columbus, Ohio agency position, Plaintiff contacted Denny Sand ("Mr. Sand"), a District Manager in Arizona, to inform him of her intention to pursue a position as an agent in his district. (*Id.* at 137; Sand Dep. at 54.) On March 5, 2010, Mr. Sand informed Plaintiff that the Arizona position was no longer an option. As a result, Plaintiff emailed Ms. Jackson to inform her that she "may need" the Columbus, Ohio Agency position, that she had rejected three days earlier, as the Arizona position might no longer be an option. (Lopez Dep. at 138-39.) Ms. Jackson informed Plaintiff that she had already started the process of dispersing the policies to existing agents and, therefore, the agency position was no longer available. (Steffen Dep. 108, Jackson Dep. 160-61, 165, 195-96, Lopez Dep. at 140, 142.) As a result, Plaintiff's employment with American Family was terminated because she was unable to obtain another position with the company before the March 31, 2010 deadline. (Lopez Dep. 163-64.)

### 4. Investigation into Plaintiff's Misuse of Expense Account Funds

As District Manager at American Family, Plaintiff was provided with expense accounts to use for rent and staffing of her office, utilities, and other costs associated with managing her district. (Lopez Dep. 154.) Although Plaintiff was no longer a district manager after January 25, 2010, American Family continued to provide her with expense accounts to assist in covering the continued expenses of rent, staffing and utilities while her offices were winding down through March 31, 2010. (Jackson Dep. 183-84, 204.) During this winding down period, Plaintiff attempted to expense $2,144 for new office chairs for the district manager office she was closing, $155 for a step ladder, $126 for an Arizona insurance license, $1,389 for a leather briefcase and tote, a new vacuum cleaner, and a 19-inch television for the meeting room in the office. (Lopez Dep. 147-48, 150-53, 159-61.) Ms. Jackson became aware of Plaintiff's expenses in March of 2010, and referred Plaintiff's expense account issue to corporate compliance to further investigate the issue. (Jackson Dep. 187-88.) Additionally, Ms. Jackson contacted the Arizona State Sales Director, Gary Schraufnagel, who also was the hiring manager for the Arizona team manager position that Plaintiff was attempting to pursue, and informed him that Plaintiff was under investigation. (Jackson Dep. at 143, 155, Ex. 8.) At the conclusion of the investigation, American Family determined that Plaintiff had "improperly utilized her expense account" and Plaintiff reimbursed the company for the funds. (Steffen Dep. at 103, Lopez Dep. at 162, Jackson Dep. at 197.)

### II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides:

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

■ Though the Rule was amended in 2010, the summary judgment standards and burdens have not materially changed. *See* Fed. R. Civ. P. 56 advisory committee's notes (2010 Amendments) ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c). . . ."); *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 n. 4 (1st Cir.2011). In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is

"genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir.1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.*

■ If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Zinn v. United States*, 885 F.Supp.2d 866, 871 (N.D.Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F.Supp. 1, 4 (S.D.Ohio 1992)). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id.* Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989) (citing *Frito–Lay, Inc. v.*

*Willoughby*, 863 F.2d 1029, 1034 (D.C.Cir. 1988)).

## III. LAW AND ANALYSIS

Plaintiff's claims can be categorized as follows: (1) race-based disparate treatment claims under federal and state law; (2) age-based disparate treatment claims under federal and state law; (3) breach of Ohio Public Policy claim; and (4) intentional infliction of emotional distress claim under Ohio law. The court will analyze each claim in turn.

### A. Rase-Based and Age-Based Disparate Treatment Claim Based on Plaintiff's Termination

In Defendants' Motion for Summary Judgment, they argue that Plaintiff's race and age discrimination claims fail as a matter of law because Plaintiff cannot demonstrate "additional direct, circumstantial or statistical evidence" required to meet the fourth prong of either her race or age discrimination claim, or that American Family's reasons for terminating her employment were only a pretext for her discriminatory firing. (Defs.' Mot. for Summ. J. at 11-15.) Plaintiff argues in response that Defendant inappropriately focuses on the *McDonnell Douglas* burden shifting framework which does not apply to the summary judgment analysis in mixed-motive claims under Title VII. (Pl.'s Opp'n at 8-9.) Plaintiff also argues that American Family displacing her as part of its de-emphasizes of the Hispanic market and failing to offer her an open position after displacing her demonstrate evidence of discrimination. (*Id.* at 12.) Additionally, Plaintiff argues that a slightly modified version of the *McDonnell Douglas* burden shifting framework applies to her age discrimination claim. (*Id.* at 13, 16.) She also maintain that there is evidence that age was the motivating factor behind her termination because the interview process favored young applicants and that the two oldest applicants were displaced. (*Id.*) Furthermore, Plaintiff argues that the interview process was developed as a pretext for discrimination, put into place to displace or terminate older or ethnic applicants, and that Defendants did not use an unbiased selection process based solely on applicants' scores when determining which applicants to displace. (*Id.* at 16-18.)

Plaintiff brought her claims of race discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and Ohio Law. Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). Such acts are also unlawful under 42 U.S.C. § 1982 and under Ohio Law. Ohio Rev. Code § 4112.02(a). Similarly, Plaintiff brought her age discrimination claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Ohio Law. ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Such acts are also unlawful under Ohio Law. Ohio Rev. Code § 4112.02(a).

### 1. Mixed Motive Race Discrimination Claims

The Sixth Circuit has held that the *McDonnell Douglas* burden-shifting framework does not apply to the summary judgment analysis of Title VII mixed-motive claims. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir.2008). To survive a motion for summary judgment, a plaintiff asserting a mixed-motive claim must demonstrate that: "(1) the defendant took an adverse employment action

against the plaintiff; and (2) race, color, religion, sex, or national origin was a motivating factor for the defendant's adverse employment action." *Id.* (internal citations ommitted). The burden placed on a plaintiff asserting a mixed-motive claim is not onerous and summary judgment should only be granted where the record is devoid of evidence that could reasonably be construed to support the plaintiff's claim. *Id.* Thus, the ultimate question is whether there are any genuine disputes of material fact concerning the defendant's motivation for its adverse employment decision. *Id.* at 402.

■ The court finds that as a Hispanic individual, Plaintiff is a member of the protected classes. Furthermore, the record shows that Plaintiff experienced an adverse employment action—her employment with American Family was terminated. Defendants do not contest these facts. Therefore, to survive summary judgment, Plaintiff must only demonstrate that her race was a motivating factor for this adverse employment action.

In order to support her contention that race was a motivating factor for her termination, Plaintiff argues that American Family attempts to mirror its market and that it decided to de-emphasize the Hispanic market which caused American Family to no longer need a Hispanic manager to recruit Hispanic agents. (Pl.'s Resp. at 11.) Plaintiff argues that as a result of the decision to de-emphasize the Hispanic market American Family terminated her employment. (*Id.* at 12.) Plaintiff also argues that out of thirteen district managers she was the only minority and the only district manager that was terminated. (*Id.*)

Defendants contend that they never attempted to de-emphasize its Hispanic market and it did not conduct a statewide RIF for this purpose. (Defs.' Reply at 4.) Defendants also argue that they did not have

a duty to offer Plaintiff another position after her job was eliminated. However, like the other district manager who was not selected in the RIF and was not a member of a protected class, Plaintiff was offered an agency position. (*Id.* at 6.) Defendants' further contend that Plaintiff was only terminated after she rejected this offer. (*Id.* at 6-7.)

The court finds that Plaintiff fails to meet her burden of demonstrating that race was a motivating factor in the termination of her employment with Defendants. First, Plaintiff has failed to demonstrate that Defendants de-emphasized their Hispanic Market and that this was motivation for her termination. The only evidence Plaintiff points to in order to show that Defendants de-emphasized their Hispanic market is that Louis Besses who used to be a marketing person who helped Defendants build relationships with the African American, Hispanic, and Asian communities in Cleveland, Ohio was removed from this position and replaced by an individual who did not have these responsibilities. (Jackson Dep. at 30-33). Instead, the record reflects that American Family has never de-emphasized its market focus on a particular group. (*Id.* at 33; Steffen Dep. at 45; Lacey Dep. at 103-104). Additionally, the record reflects that, while Louis Besses relocated to Georgia and began to develop minority markets there when Defendants opened in the State of Georgia, he also continues to be responsible for developing minority markets in Ohio. (Lacey Dep. at 101). Thus, Plaintiff has failed to produce evidence from which a jury could logically infer that Defendants de-emphasized their Hispanic market and that this was motivation for her termination.

In addition, Plaintiff has also failed to demonstrate that her being the only district manager terminated shows that race was a motivating factor for her termi-

nation. Plaintiff argues that of the thirteen district managers she was the only one terminated as a result of the realignment. (Pl.'s Resp. at 12.) Plaintiff argues that Defendants never intended to offer her an agency position and that she was the only applicant not selected for the realigned district manager position and also was not offered an open agency position. (*Id.*) Additionally, Plaintiff argues that Ms. Jackson sabotaged her prospective employment position in Arizona by informing decision makers that Lopez was under investigation for misuse of funds. (Pl.'s Resp. at 7.) However, the record does not support Plaintiff's contentions.

Instead, the record reflects that Plaintiff and Mr. Graham, a member of a non-protected racial class, were the two applicants that scored the lowest in the interview for the restructured positions and as a result both were not selected for the restructured positions. (Jackson Dep. 107-08). The record also reflects that Defendants offered both Plaintiff and Mr. Graham an agency opportunity after they were not selected for a restructured district manager position. (Lopez Dep. at 116-18, 166; Jackson Dep. at 132-33, 140, 169). Mr. Graham accepted the agency opportunity he was offered. (Lopez Dep. 166; Jackson Dep. 132-33, 146, 169, 181, 195). However, Plaintiff was offered an opportunity to take over the agency of Hans Hansen and she rejected this offer on March 2, 2010, instead, choosing to pursue other opportunities with American Family in Arizona. (Lopez Dep. at 116-18, 120, 132-33; Steffen Dep. 85, 88, 108-109).

The record also demonstrates that while Plaintiff was seeking this employment opportunity in Arizona, an investigation began concerning Plaintiff's misuse of expense accounts funds. (Jackson Dep. 143-44) Ms. Jackson contacted Gary Schraufnagel, the Arizona Sales Director, who was also the hiring manager for the Arizona team manager position Plaintiff was applying for, to make him aware of the investigation. (Jackson Dep. at 143-44, 150-51; Schraufnagel Dep. at 39.) Mr. Schraufnagel and Mr. Sand both testified that the investigation against Plaintiff had nothing to do with the decision to redistribute policies to agents. (Schraufnagel at 42, 48; Sand at 73-74.) However, due to the redistribution of policies, Plaintiff was unable to secure the position in Arizona and then attempted to accept the agency position she had previously rejected. (Lopez Dep. at 138-39.) The agency position Defendants originally offered to Plaintiff was no longer available. (Steffen Dep. 108, Jackson Dep. 160-61, 165, 195-96, Lopez Dep. at 140, 142.) Therefore, Plaintiff's employment with American Family was terminated because she was unable to obtain another position with the company before the March 31, 2010 deadline. (Lopez Dep. 163-64.)

It is clear that Plaintiff and Mr. Graham, a non-protected racial class member, were both offered agency positions by Defendants. Plaintiff chose to reject her offer of an agency position and was later terminated because she failed to obtain a position with American Family by the March 31, 2010 deadline. The record does not support Plaintiff's contention that Ms. Jackson sabotaged the Arizona position due to any racial motive. Instead, the record shows Plaintiff was under investigation for the misuse of funds that she was eventually was required to pay back to American Family, and Ms. Jackson made Mr. Schraufnagel aware of the investigation in accordance with regular business practices. Additionally, Plaintiff has failed to produce any evidence from which a jury could logically infer that being the only district manager terminated evidences that race was a motivating factor for her termination. Thus, the court finds that there is no genuine dispute as to any material fact

regarding whether race was a motivating factor for Plaintiff's termination. Consequently, Plaintiff has failed to present sufficient evidence of a prima facie case for race discrimination. Thus, the court grants summary judgment in favor of Defendants on all of Plaintiff's race discrimination claims.

## 2. Age Discrimination Claim

■■■ To show age discrimination, a plaintiff must present either direct or circumstantial evidence of that discrimination. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997). Plaintiff has not offered any direct evidence of age discrimination in her termination, and the parties seem to agree that this case turns on circumstantial evidence. Circumstantial evidence is analyzed under the *McDonnell-Douglas/Burdine* burden-shifting framework. *Id.* Under this framework, Plaintiff has the initial burden to demonstrate a prima facie case of racial discrimination. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir.2009). Thus, on summary judgment, Plaintiff must present evidence that would lead a reasonable jury to conclude that Plaintiff has established such case. *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 391 (6th Cir.2009) (internal citation omitted). To establish a prima facie case of discrimination, Plaintiff must demonstrate that: "(1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified [for the position]; and (4) she was treated differently than [a] similarly-situated employee [outside the protected class] for the same or similar conduct." *McClain v. NorthWest Cmty. Corr. Str. Judicial Corr. Bd.*, 440 F.3d 320, 332 (6th Cir.2006) (internal citation omitted).

■■■ If Plaintiff meets her burden, the employer must offer a legitimate, non-discriminatory explanation for its conduct. *Chen*, 580 F.3d at 400. If the employer provides such an explanation, the burden shifts to Plaintiff to show pretext—"that the employer's explanation was fabricated to conceal an illegal motive." *Id.* In doing so, Plaintiff must present evidence from which a reasonable jury could conclude that the employer's explanation is pretext. *Risch*, 581 F.3d at 391. To establish pretext, Plaintiff must demonstrate one of the following: (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate the discharge." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994). In applying this framework, only the burden of production shifts between the parties; the burden of persuasion always remains with Plaintiff. *Risch*, 581 F.3d at 391. Moreover, the Sixth Circuit has "explained that 'on a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry.'" *Id.* at 390–91 (internal citations and alterations omitted).

■■■ However, in the case of a reduction in force, the Plaintiff must meet a heightened burden in her prima facie case. In RIF cases, the fourth prong of the prima facie burden is changed, and Plaintiff must present "additional, direct, circumstantial or statistical evidence tending to indicate that the employer singled out [the plaintiff] for discharge for impermissible reasons." *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 371 (6th Cir.1999) (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990)). As the Sixth Circuit has stated, "[i]f the plaintiff makes out a *prima facie* case, the burden then shifts to the defendant to produce evidence of a non-discriminatory reason for its action, which will necessarily be the alleged reduction in force." *Id.* The burden then shifts back to the plaintiff, who must

show that the reduction in force was used as a pretext for defendant's discriminatory actions. *Id.* (citing *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir.1998). The Sixth Circuit has stated that, "[t]o prevail ... plaintiff must come forward with some evidence to rebut the presumption that the reduction in the workforce is the legitimate reason for her termination." *Jones v. Fluor Fernald, Inc.*, 216 Fed.Appx. 461, 462–63 (6th Cir.2006).

■ Defendants do not dispute that Plaintiff is a member of a protected class, was discharged from her employment at American Family, or that she was qualified to be a district manager at American Family. Consequently, Plaintiff has satisfied the first three prongs of her prima facie case for age discrimination. However, Defendants argue that Plaintiff has not satisfied the fourth element of her prima facie case because she has not met her heightened burden of production requiring additional evidence that age was the reason for her termination. (Def.'s Mot. Summ. J. at 12, ECF No. 27; Def.'s Reply at 10, ECF No. 36.)

Defendants point to the fact that Plaintiff has sought to meet this burden solely on the basis that she and Stephen Graham were the two oldest candidates that interviewed for the restructured district manager positions. (Def.'s Reply at 10.) Defendants argue that this fact is insufficient to create a prima facie case of discrimination in a workforce reduction case. (*Id.*)

Plaintiff argues that she and Mr. Graham were the oldest two applicants and the only two not selected for the restructured positions. (Pl.'s Resp. at 15.) Plaintiff argues that there were no concerns with her performance and that her displacement also was not a result of a personality conflict. (*Id.* at 15-16.) Plaintiff also argues that while the best indicator of future performance is past performance, the interview process did not account for

past performance. (*Id.* at 16.) Plaintiff further argues that the factors that were taken into account in the interview process were selected to favor younger applicants. (*Id.*) The court finds that Plaintiff has failed to meet her prima facie burden as to her age discrimination claim.

Plaintiff states that the fact that she and Mr. Graham, who were the oldest applicants for the restructured district managers, were the only two not selected in the restructured positions, is evidence that she singled was out to be terminated based upon her age. However, the court does not find that this is evidence of discrimination. Plaintiff and Mr. Graham were asked the same questions and evaluated under the same criteria as the other candidates. However, they scored the lowest in the interviews among all other applicants for the restructured positions. Simply stating that Plaintiff and Mr. Graham were the oldest two applicants and both not selected for the restructured positions is not enough to meet the burden in a RIF case. *See, e.g., Adams v. Proto Plastics, Inc.*, 151 Fed.Appx. 468, 470 (6th Cir.2005) (rejecting the argument that, in a RIF case, "the fourth [prima facie] element [is] satisfied whenever substantially younger employees in positions comparable to the plaintiff's are not terminated."). The court also notes that, while Mr. Graham was not selected for a restructured position, he was not terminated. He accepted an agency opportunity offered to him by Defendants. In contrast, Plaintiff was also offered an agency opportunity after not being selected for a restructured position and she chose to reject the position. (Lopez Dep. at 116-18, 120; Steffen Dep. at 85, 88, 108-09.)

■ Next, Plaintiff argues that the fact that she was terminated after she "received the highest annual bonus of all district managers the preceding year, ranked high amongst her peers with regard to

profitability, and received positive reviews and salary increases from Ms. Jackson" is evidence of discrimination. (Pl.'s Resp. at 15.) However, "the decision to discharge a qualified, older employee [in a RIF] is not inherently suspicious." *Brocklehurst v. PPG Industries, Inc.*, 123 F.3d 890, 896 (6th Cir.1997). The court does not find persuasive Plaintiff's proffered evidence in this regard. That Plaintiff had received the highest bonus among her peers, ranked high in profitability, received positive reviews, and received salary increases is not evidence of discrimination, even at the prima facie stage. As the record reflects, the performance among all the District Managers was fairly equal. Therefore, Defendants decided to focus in the interview process on the applicant's business plans for the future in determining who was best qualified for the restructured positions. (Steffen Dep. 10, 52-53; Jackson Dep. 89.) Plaintiff scored the lowest in the interview process because her business plan did not speak to future vision, instead focusing on measures already in place. (Jackson Dep. at 99-101.) Additionally, she scored low because her presentation was disorganized. (*Id.*)

Plaintiff also argues that the fact that the interview process did not account for past performance is evidence of discrimination. (Pl.'s Resp. at 16.) Plaintiff argues that Defendants strategically decided not to account for tenure in the interview process. (*Id.*) Plaintiff asserts that failure to take these factors into account favors young applicants. (*Id.*) The court does not find these facts to be evidence of discrimination. As previously stated, the record reflects that the performance among all the District Managers was fairly equal; thus, Defendants decided to focus on the interview process, including the applicant's business plans for the future in determining who was best qualified for the restructured positions. Additionally, Defendants assert that the industry, consumers and

American Family's competitive situation were changing, thus, presentations demonstrating plans for the future were important. As a result, the court finds that there is no genuine dispute of material fact regarding whether Plaintiff was singled out and terminated due to her age. Consequently, Plaintiff has failed to present evidence to establish a prima facie case of age discrimination. Thus, the court grants summary judgment in favor of Defendants on all of Plaintiff's age discrimination claims.

## B. Plaintiff's Public Policy Claim

 Defendants argue that Plaintiff's public policy claim fails as a matter of law because Ohio law does not permit Plaintiff to assert a separate public policy tort claim where discrimination laws provide adequate remedies for relief. (Def. Mot. for Summ. J. at 15-16.) Plaintiff does not respond to this argument in her Response to Defendants' Motion for Summary Judgment. The court finds Defendants' argument well-taken. Ohio law does not "recognize a common-law claim when remedy provisions are an essential part of the statutes on which the plaintiff depends for the public policy claim and when those remedies adequately protect society's interest by discouraging the wrongful conduct." *Leininger v. Pioneer Nat'l Latex*, 115 Ohio St.3d 311, 875 N.E.2d 36, 42–43 (2007). The Ohio Supreme Court has specifically held, "that a common-law tort claim for wrongful discharge based on Ohio's public policy against age discrimination does not exist, because the remedies in R.C. Chapter 4112 provide complete relief for a statutory claim for age discrimination." *Id.* at 319, 106 S.Ct. 2548. This same rationale also precludes Plaintiff from bringing a common-law tort claim for wrongful discharge based on Ohio's public policy against race discrimination, because Chapter 4112.02 provides sufficient relief.

See Carter v. Delaware Cnty. Bd. of Comm's, 2009 WL 544907, at *13 (S.D.Ohio 2009); see also Wakefield v. Children's Hosp., 2008 WL 3833798, at *8 (S.D.Ohio 2008). Thus, the court grants summary judgment in favor of Defendants on Plaintiff's public policy claim.

## C. Intentional Infliction of Emotional Distress Claim

■ Defendants argue that Plaintiff's intentional infliction of emotional distress claim fails because Plaintiff fails to demonstrate the type of extreme and outrageous intentional conduct as well as the severe emotional distress necessary to support such a claim. (Defs. Mot. for Summ. J. at 18.) Plaintiff contends that Defendants asked Plaintiff to re-apply for a position she already had because they needed to downsize, ignored Plaintiff's history of positive past performance, and implemented an "illusory" interview process that was used to displace and eventually terminate Plaintiff due to her age and/or race. (Pl. Resp. at 19.) Plaintiff further contends that this conduct was extreme and outrageous, and Defendants should have known it would cause emotional distress to Plaintiff. (Id.)

■ To establish a prima facie case for intentional infliction of emotional distress under Ohio law, Plaintiff must show "(1) that the defendant intended to cause [or recklessly caused] the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." Phung v. Waste Mgt., Inc., 71 Ohio St.3d 408, 644 N.E.2d 286, 289 (1994). For this action, "liability clearly does not extend to mere insults, indignities, threats, annoyances," malice, or even conduct that would entitle a party to an award of punitive damages for another tort. Yeager v. Local Union 20, 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983) (abrogated on other grounds by Welling v. Weinfeld, 113 Ohio St.3d 464, 866 N.E.2d 1051 (2006)). Liability for this tort can only be found "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 375. Moreover, serious emotional distress involves an "emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." Miller v. Currie, 50 F.3d 373, 378 (6th Cir.1995) (quoting Paugh v. Hanks, 6 Ohio St.3d 72, 451 N.E.2d 759, 761 (1983)).

Even accepting all of Plaintiff's allegations as true, the circumstances Plaintiff describes cannot establish intentional infliction of emotional distress, because she cannot demonstrate that the conduct was extreme and outrageous. It cannot be said that it goes beyond all possible bounds of decency to ask an employee to re-apply for a position when an employer downsizes and to ignore the employees' past performance in the interview process. Even if Defendants implemented an "illusory" interview process as Plaintiff alleges with the intent to displace and then terminate Plaintiff because of her race and/or age; such conduct cannot be said to go beyond all possible bounds of decency as to be regarded as atrocious, and utterly intolerable in a civilized community. See Godfredson, 173 F.3d at 376 ("an employee's termination, even if based upon discrimination, does not rise to the level of "extreme and outrageous conduct" without proof of something more"). The standard under Ohio law for extreme and outrageous conduct is high, and even when the court accepts all of Plaintiff's facts as

true, Plaintiff has failed to produce evidence to meet the standard.

Additionally, Plaintiff fails to put forth sufficient evidence to demonstrate serious emotional injury. She fails to demonstrate that she has a severe and debilitating emotional injury caused by Defendants' conduct. She also fails to produce sufficient evidence that the injury is severe enough that a reasonable person would be unable to cope with the mental distress caused by these incidents. Plaintiff only puts forth a scintilla of evidence of her emotional distress in that she states that she was under constant stress, feels pain and tightness in her chest, and experiences shortness of breath due to Defendants' actions. (Lopez Dep. at 170–71.) Consequently, there is no genuine dispute of material fact, and Plaintiff has not presented evidence to establish a prima facie case for intentional infliction of emotional distress. Thus, the court grants summary judgment in favor of Defendants on Plaintiff's intentional infliction of emotional distress claim.

### IV. CONCLUSION

For the foregoing reasons, the court grants Defendants' Motion for Summary Judgment (ECF No. 27).

IT IS SO ORDERED.