**Thomas Z. ZINN, et al., Plaintiffs**

v.

**UNITED STATES of America, Defendant.**

**Case No. 1:11 CV 278.**

United States District Court,
N.D. Ohio,
Eastern Division.

July 26, 2012.

Derek J. Walden, Killough Law, Columbus, OH, for Plaintiffs.

Andrea A. Kafka, Washington, DC, for Defendant.

## ORDER

SOLOMON OLIVER, JR., Chief Judge.

Plaintiffs Thomas and Margaret Zinn ("Plaintiffs" or the "Zinns") filed this action under 26 U.S.C. § 7422 against the United States of America ("United States"). Plaintiffs assert that the United States wrongly denied their theft loss deduction for taxable year 2004. Currently pending before the court are Plaintiffs' Motion for Summary Judgment (ECF No. 20) and the United States's Motion for Summary Judgment (ECF No. 19). For the following reasons, the court denies Plaintiffs' Motion and grants the United States's Motion.

## I. BACKGROUND

The relevant facts of this case are largely undisputed. On March 19, 2004, Plaintiffs entered into an unsecured promissory note with Joanne and Alan Schneider in the amount of $300,000. (Aff. of Thomas Zinn ¶ 3, ECF No. 20–1; Promissory Note, ECF No. 1–3.) Unbeknownst to Plaintiffs, the Schneiders were defrauding investors in a massive Ponzi scheme. (Pls.' Ex. 3 at 4, ECF No. 20–3.) The Schneiders lured investors into purchasing promissory notes with the promise of unrealistic interest rates, and then used the money from new investors to repay earlier ones. (Id.)

The Ohio Department of Commerce ("ODC") filed ODC v. Schneider, Case No. 04–548887, on December 1, 2004 in the Cuyahoga County Court of Common Pleas in order to enjoin the Schneiders from continuing to sell promissory notes. The ODC successfully obtained a preliminary injunction against the Schneiders. (ODC v. Schneider et al. Complaint, Pls.' Ex. 2, ECF No. 20–2.) The court also appointed a special master—Matthew Fornshell, former director of enforcement for the Ohio Division of Securities—to supervise compliance with the injunction. Thomas Zinn avers that it was "at this time that I first realized that my unsecured investment with the Schneiders would not be recovered." (Zinn Aff. ¶ 8.) By the time the suit was filed, the Schneiders admitted to owing approximately $60 million in unpaid notes, but none of the notes were in default as of December 2004. (Pls.' Ex. 2 at ¶ 15.) The Schneiders continued to sell the notes in violation of the court's Order, until February 2005 when their assets were frozen. (ODC v. Schneider et al. Dkt., Def. Ex. 6B at 56–57, ECF No. 19–9.) The court then elevated Fornshell to Receiver to oversee the liquidation of the Schneiders' assets and the distribution of those assets to investors. (Id.) Following the appointment of a Receiver, the Zinns intervened in the ODC v. Schneider litigation, and filed a separate answer, counterclaim, crossclaim, and jury demand on July 5, 2005. (Id. at 50.)

In his capacity as Receiver, Fornshell filed periodic updates with the court. In a December 2008 filing, the Receiver reported that the liquidation of the Schneiders' assets yielded a total of $20,955,622.98. (Def. Ex. 7 at 3, ECF No. 19–10.) In the same report, the Receiver also told the court it was unknown how much of the Schneiders' assets would be distributed to unsecured investors until the claims of secured investors were resolved. (Id. at 2.) Of that approximately $21 million, secured creditors eventually made claims in the

amount of $20 million dollars. (Pls.' Mot. at 15.)

Plaintiffs were also involved in separate litigation filed by the Receiver against FirstMerit Bank in May of 2006. (Def.'s Exs. 9, ECF No. 19–12.) *Fornshell* was brought by the court-appointed Receiver on behalf of unsecured creditors. (Def. Ex. 9, ECF No. 20–12.) The litigation against FirstMerit resulted in a settlement in late 2011, and Plaintiffs ultimately recovered 17% of their loss at the close of that year. (Def.'s Mem. in Support 7, ECF No. 19–1.)[1] On December 27, 2011, the Receiver notified unsecured investors that he did not expect additional funds to become available for reimbursement. (Pls.' Mot. 9, ECF No. 20.)

This suit arises out of Plaintiffs' attempt to claim the theft loss resulting from their lost investments with the Schneiders as a deduction for taxable year 2004. On November 10, 2006, the Zinns filed an amended return for taxable year 2004 and claimed a deductible theft loss in the amount of $323,595.00. (Zinn Aff. ¶ 11; 2004 Amended Return, ECF No. 1–4.) Plaintiffs assert that this amount includes $23,595.00 in legal fees incurred "while pursuing an unsuccessful legal action against the Schneiders."[2] (Zinn Aff. ¶ 4.) The theft loss created a net-operating loss ("NOL") which Plaintiffs are attempting to carry back to taxable year 2001. (*Id.* ¶ 12.) Alongside the amended return, the Zinns filed a Form 1045, Application for a Tentative Refund, reflecting the carry-back to 2001 and requesting a refund in the amount of $125,770.00 for taxable year 2001. (Application for Tentative Refund, ECF No. 1–5.) By letter dated March 15,

2010, the Appeals Office of the Internal Revenue Service ("IRS") denied the Zinns' claim for a theft loss deduction for taxable year 2004 and carry-back to 2001. (IRS Denial, ECF No. 1–7.)

On February 8, 2011, Plaintiffs filed a refund action in this court pursuant to 26 U.S.C. § 7422. Plaintiffs seek a "refund of $125,770.00 of internal revenue taxes erroneously collected for a loss sustained in the 2004 tax year. Their 2004 loss created a net operating loss that was carried back to 2001." (Compl. ¶ 1, ECF No. 1.) On March 1, 2012, the United States filed its Motion for Summary Judgment against the Zinns. (Def.'s Mot. for Summary J., ECF No. 19.) Plaintiffs filed their Motion for Summary Judgment on March 1, 2012 as well. (Pls.' Mot. for Summary J., ECF No. 20.) On March 30, 2012, both parties filed Oppositions to the respective Motions for Summary Judgment. (Pls.' Opp'n, ECF No. 21; Def.'s Opp'n, ECF No. 22.) Only the United States filed a Reply in further support of its Motion. (ECF No. 23.)

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

---

1. As is explained more fully below, Plaintiffs' ultimate recovery of a portion of their investment is irrelevant to the dispositive issues before the court. *See Jeppsen v. Comm'r*, 128 F.3d 1410, 1415 (10th Cir.1997). This fact is presented here only as background information.

2. Though not clear from the Zinn affidavit, it appears that Plaintiffs are referring to expenses incurred as a result of their intervention in the *ODC v. Schneider* litigation.

fact and the movant is entitled to judgment as a matter of law. . . .

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Schebil,* 188 F.3d 365, 369 (6th Cir.1999). The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.*

However, "where the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir.1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487–88 (1984)). Thus, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie,* 526 U.S. 541, 553, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999).

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F.Supp. 1, 4 (S.D.Ohio 1992). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id.* Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact."

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C.Cir.1988)).

## III. STATUTORY AND REGULATORY FRAMEWORK

A taxpayer can claim as a deduction "any loss sustained during the taxable year and not compensated for by insurance or otherwise." *See* 26 U.S.C. § 165. Pursuant to 26 U.S.C. § 165(e), a theft loss "shall be treated as sustained during the taxable year in which the taxpayer discovers such loss." *See also* 26 C.F.R. § 1.165–1(d)(3). However, "if in the year of discovery there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165 [26 U.S.C. § 165], until the taxable year in which it can be ascertained with reasonable certainty whether or not such reimbursement will be received." 26 C.F.R. § 1.165–1(d)(3).[3] Theft losses also qualify as net operating losses and may be "carried back" up to three taxable years and "carried over" to each of the taxable 20 years following the taxable year of the theft loss. 26 U.S.C. § 172(a), (b)(1)(F)(ii)(J).[4]

██ Whether a taxpayer has a reasonable prospect of recovery is a question of fact to be answered objectively. *See* 26 C.F.R. § 1.165–1(d)(2)(i); *see also Jeppsen v. Comm'r*, 128 F.3d 1410, 1418 (10th Cir.

1997). The taxpayer's subjective assessment of his prospects is considered only to a limited extent in this analysis. *See Jeppsen*, 128 F.3d at 1418 (*citing Ramsay Scarlett & Co. v. Comm'r*, 521 F.2d 786, 788 (4th Cir.1975)). The standard to determine if a reasonable prospect exists is one of foresight, and therefore the court only considers facts which are reasonably foreseeable at the close of the taxable year. *See Estate of Scofield v. Comm'r*, 266 F.2d 154, 163 (6th Cir.1959); *see also Vincentini v. Comm'r*, 429 Fed.Appx. 560, 564 (6th Cir.2011) (explaining that "the Court must examine a taxpayer's reasonable expectations at the close of the taxable year in which the deduction was claimed").

██ A reasonable prospect of recovery exists if a taxpayer has a bona fide claim for reimbursement against a third party or otherwise, and the party's chances of recovery in that suit are substantial. *See Jeppsen*, 128 F.3d at 1418. Even a reasonable prospect of partial recovery is sufficient to delay a taxpayer from claiming a loss deduction until the litigation concludes. *See Estate of Scofield*, 266 F.2d at 159. This comports with the language of 26 C.F.R. § 1.165–1(d)(3) which states that "no portion of the loss with respect to which reimbursement may be received is sustained" if there exists a claim for reimbursement for which there is a reasonable prospect of recovery. 26 C.F.R. § 1.165–1(d)(3). But "[t]axpayers need not refrain from taking a loss deduc-

---

**3.** Notwithstanding 26 C.F.R. § 1.165–1, Safe Harbor provisions allow victims of fraud to claim 75% of their theft loss while pursuing recovery under certain circumstances. (Pls.' Mot. at 13–14.) However, as Plaintiffs concede, the Safe Harbor provisions do not apply to theft loss claims for which the discovery year is a taxable year before Dec. 31, 2007, and therefore the provisions are not applicable to this action.

**4.** The Sixth Circuit has explained that the tax code's carry-back and carry-over provision allows "a taxpayer to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year." *Intermet Corp. & Subsidiaries v. Comm'r*, 209 F.3d 901, 904 (6th Cir.2000).

tion simply because there exists a remote or nebulous possibility of recovery." *Vincentini*, 429 Fed.Appx. at 564 (citations omitted).

 Ultimately, the burden is on the taxpayer to establish that he had a deductible loss. *See Boehm v. Comm'r*, 326 U.S. 287, 294, 66 S.Ct. 120, 90 L.Ed. 78 (1945); *Jeppsen*, 128 F.3d at 1418. The IRS's tax determinations are presumed to be correct and "the burden rests upon the taxpayer to prove all the facts necessary to establish the illegality of the collection." *Sherwin–Williams Co. v. United States*, 403 F.3d 793, 796 (6th Cir.2005) (*quoting Niles Bement Pond Co. v. United States*, 281 U.S. 357, 361, 50 S.Ct. 251 (1930)). If the prospect of recovery is simply unknowable, the taxpayer cannot claim a deduction until the chance of recovery can be ascertained. *See Jeppsen*, 128 F.3d at 1418; *see also Vincentini*, 429 Fed.Appx. at 564 (explaining that "[s]peculation and conjecture will not support a taxpayer deduction under this provision").

## IV. ANALYSIS

### A. Plaintiffs' Motion for Summary Judgment

In their Motion, Plaintiffs assert that they are entitled to summary judgment because they "had no *reasonable* prospect of recovery at the conclusion of 2004." (Pls.' Mot. 15 (emphasis in original).) Because Plaintiffs would bear the burden of persuasion at trial, their "summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir.2002) (quoting 11 James William Moore et al., *Moore's Federal Practice* § 56.13[1], at 56–138 (3d ed. 2000)). Plaintiffs, however, have not met this "higher" burden.

Viewing the evidence in the light most favorable to the United States, a reasonable jury could find that the prospect of recovery was simply unknowable in 2004 in light of the fact that litigation against the Schneiders had only commenced in December of 2004. *See Jeppsen*, 128 F.3d at 1418. While Plaintiffs assert that, at the end of 2004, they realized their investment would never be recovered, (Zinn Aff. ¶ 8), a jury could nevertheless find that the Zinns believed they had a claim for reimbursement for which they had a reasonable prospect of recovery based on their subsequent intervention in the *ODC v. Schneider* litigation. *See Dawn v. Comm'r*, 675 F.2d 1077, 1078 (9th Cir.1982) ("The fact that taxpayers filed a lawsuit to recover the deducted loss gives rise to an inference that they had such a claim.") As the Ninth Circuit concluded in *Dawn*, the fact that the taxpayers "did not file their suit until after [the year for which] they claimed the deduction does not negate this inference." *Id.* Rather, "the filing of the suit so soon after the end of the tax year for which the loss was claimed suggests that taxpayers did not consider their loss 'closed and completed' in [the taxable year]." *Id.* The fact that the Zinns' intervention in *ODC v. Schneider* was ultimately unsuccessful is also inconsequential. *Id.* at 1079.

Moreover, because the litigation against the Schneiders had only commenced at the close of 2004, a jury could find that it was unknowable what assets could be recovered in order to pay back investors. In *Vincentini*, the Sixth Circuit similarly concluded that a theft loss deduction was properly denied as premature notwithstanding the fact that the perpetrators of the Ponzi scheme at issue in the case had been convicted in a criminal trial in the year in which the taxpayer was claiming the deduction. The Sixth Circuit noted, that "[n]otwithstanding the convictions, in

2002 the trial courts ... had not decided whether the ... Defendants would be subject to property forfeitures or restitution orders." *Vincentini,* 429 Fed.Appx. at 565. The same is true in this case. Indeed, as part of *ODC v. Schneider,* the Receiver did not report the total yield of the liquidation of the Schneiders' assets until 2008. (Def. Ex. 7 at 3, ECF No. 20–10.) Because the record in this case is susceptible to such inferences, summary judgment in favor of the Plaintiffs is inappropriate.

■ Finally, while Plaintiffs present an affidavit from John Lewis, former Vice President of Operations of Fraud Recovery Group, Inc., in which Lewis avers that he successfully claimed theft loss deductions for eleven taxpayers who were defrauded by the Schneiders using 2004 as the year of discovery, (Lewis Aff., ECF No. 20–5), the court will not find in Plaintiffs' favor under an estoppel theory because the question of whether a taxpayer can properly claim a theft loss deduction is a case and fact specific determination. Therefore, Plaintiffs' argument that "[t]here is strong public policy in favor of uniform application and interpretation of the federal tax laws," (Pls.' Mot. at 18 (citing *Adams v. United States,* 420 F.Supp. 27, 30 (S.D.N.Y.1976))) is unavailing.

## B. The United States's Motion for Summary Judgment

In its Motion for Summary Judgment, the United States does not dispute that the Zinns incurred a theft loss as a result of their involvement in the Schneiders' scheme or that this loss could properly be claimed as a deductible theft loss. (Def.'s Mem. in Support 2, ECF No. 19–1.) However, the United States disputes the amount of the loss claimed by the Zinns

and that 2004 is the proper year for the Zinns to claim the theft loss deduction.[5] The accuracy of the theft loss amount, however, is inconsequential at this juncture because the Defendant is entitled to summary judgment on the ground that 2004 is not the proper year in which Plaintiffs can claim their theft loss deduction.

■ The taxpayer bears the burden of demonstrating that the Government collected an incorrect tax amount and that he is entitled to a refund. *See Sherwin–Williams,* 403 F.3d at 796; *see also Jeppsen,* 128 F.3d at 1418. In this case, Plaintiffs must demonstrate that, at the close of December 31, 2004, there was no reasonable prospect of recovery from the Schneiders. *See* 26 C.F.R. § 1.165–1(d)(3). Lawsuits present a reasonable prospect of recovery unless their "potential for success are remote or nebulous." *See Jeppsen,* 128 F.3d at 1415 (quoting *Ramsay Scarlett & Co. v. Comm'r,* 61 T.C. 795, 811–12, (1974)). Only those facts that were known or reasonably foreseeable at the end of 2004 are relevant to the court's analysis. *See Estate of Scofield,* 266 F.2d at 163; *see also Vincentini,* 429 Fed.Appx. at 564. But as the court previously noted, the court may properly consider the Zinns' intervention in the *ODC v. Schneider* just a few months after the close of the 2004 taxable year inasmuch as it is reflective of the Zinns' expectations at the close of 2004. *See Dawn,* 675 F.2d at 1078–79; *Jeppsen,* 128 F.3d at 1415–16 (citing *Dawn,* 675 F.2d at 1078). Therefore, the court rejects Plaintiffs' argument that their involvement in *ODC v. Schneider* is "irrelevant to this Court's determination of 2004 as the year of discovery." (Pls.' Opp'n 5, ECF No. 21.)

---

**5.** The United States directs the court to the Receiver's October 2011 Motion for Approval of Final Proposed Schedule of Allowed Unse-

cured Claims of Investors in which the Zinns' claim is listed as $264,000.00. (Def.'s Ex. 8, ECF No. 26.)

■ The United States asserts that there is insufficient evidence from which a reasonable jury could find Plaintiffs had no reasonable prospect of recovery because the "fact that the action by the Ohio Department of Commerce was commenced during December of 2004, shows it was premature for the Zinns to claim their theft loss as of December 31, 2004. Until the Receiver began to collect and sell the Schneiders' assets and see what avenues for recovery were available against third parties, it was simply not ascertainable what recovery, if any, the Zinns could expect to receive as a return on their investment." (Def.'s Reply 4, ECF No. 23.) The court agrees with Defendant, and finds that there is insufficient evidence from which a reasonable jury could find Plaintiffs had no reasonable prospect of recovery at the close of 2004. More specifically, Plaintiffs have not provided evidence to rebut the inference that the filing of *ODC v. Schneider* litigation at the close of 2004 presented a reasonable prospect of recovery. Therefore, Defendant's Motion for Summary Judgment is granted.

## V. CONCLUSION

For the foregoing reasons, the court denies Plaintiffs' Motion for Summary Judgment (ECF No. 20), and grants the Defendant United States's Motion for Summary Judgment. (ECF No. 19.)

IT IS SO ORDERED.