**Albert H. SCHEMPP, Plaintiff**

v.

**GC ACQUISITION, LCC,
et al., Defendants**

**Case No.: 1:13 CV 2558**

United States District Court,
N.D. Ohio, Eastern Division.

Signed September 30, 2014

Jeffrey D. Zimon, Zimon Law Firm, Cleveland, OH, for Plaintiff.

Mary C. Dirkes, Stephen P. Dunn, Howard & Howard, Royal Oak, MI, for Defendants.

## ORDER

SOLOMON OLIVER, JR., CHIEF JUDGE, UNITED STATES DISTRICT COURT

Currently pending before the court in the above-captioned case is Defendants GC Acquisition, LLC, Glastic Corporation Supplemental Executive Plan "A", and Rochling Glastic Composites' (together, "Defendants") Motion to Dismiss (ECF No. 13) and Plaintiff Albert Schempp's ("Plaintiff" or "Schempp") Motion for Summary Judgment on a limited issue in the case (ECF No. 21). For the following reasons, the court grants Defendants' Motion to Dismiss, treated as Motion for Summary Judgment, and denies Plaintiff's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff retired from Glastic Corporation ("Glastic") in 1992 as its President. (Pl.'s Resp. at 3, ECF No. 20.) Starting in January 1994, Plaintiff began receiving monthly pension benefits under the Glastic Corporation Supplemental Executive Retirement Plan A ("SERP A") totaling $4,556 per month. (Id.) SERP A was adopted to supplement ordinary retirement benefits for certain highly-compensated Glastic executives, and the plan provided for lifetime monthly pension benefits. (Id.; Defs.' Mem. Supp. Mot. Dismiss at 3, ECF No. 14.) SERP A was a "top hat" plan for Employee Retirement Income Security Act ("ERISA") purposes,[1] meaning that it was an unfunded plan. (Compl. at ¶¶ 1, 5, ECF No. 1.) Plaintiff received payments under SERP A until December 31, 2005. (Defs.' Mot. Dismiss Mem. at 3.)

In late 2005, after a downturn in business, Glastic's board of directors decided to terminate payments under SERP A. (Id.) In November 2005, Glastic notified Plaintiff of its intention to terminate SERP A. (Pl.'s Resp. at 3.) The Glastic Board of Directors then prepared a board action to effectuate the termination of SERP A, which Plaintiff alleges was unsigned. (Id. at 4.) SERP A required any amendment to the plan to be agreed to in writing by the Board of Directors, G.E. Grant ("Grant"), and R.E. Donnelly ("Donnelly"). At the time of SERP A's execution, Grant and Donnelly served as President and Vice President of Glastic, respectively, and were also intended recipients of SERP A benefits. (Supplemental Executive Retirement Plan A at § 1.1, Defs.' Mot. Dismiss Mem. Ex. A, ECF No. 14-2.) Although Grant and Donnelly did not agree in writing to the discontinuation of SERP A, the unsigned board action was accompanied by an acknowledgment by Patrick Greene ("Greene") and Mark Diampietro ("Diampietro"), who served as Glastic's President and Vice President, respectively, at the time SERP A was terminated. (Id. at 4-5.)

Plaintiff stopped receiving SERP A payments in December 2005. (Pl.'s Resp. at 4.) On March 6, 2006, at a Glastic Board of

---

1. Top hat plans do not receive the same ERISA protections as typical retirement plans as they are maintained "primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." 29 U.S.C. § 1101(a)(1).

Directors meeting, Glastic resolved to adopt new Deferred Compensation Agreements to compensate those who had previously received payments under SERP A and other such plans. (*Id.* at 5-6.) Plaintiff was presented with a model version of the new Deferred Compensation Agreements ("2006 Agreement"). (*Id.* at 6.) Plaintiff, through his counsel, negotiated the terms of the 2006 Agreement with Glastic. (*See* Defs.' Mot. Dismiss Mem. Ex. E, ECF No. 14-6; *id.* at Ex. F, ECF No. 14-7; *id.* at Ex. G, ECF No. 14-8.) Plaintiff executed the new agreement on March 11, 2006. (Pl.'s Resp. at 6.)

The 2006 Agreement contains an opening section ("Recitals") explaining that the 2006 Agreement was being put in place to "provide a limited supplemental retirement benefit" to participants in SERP A who had stopped receiving benefits at the end of 2005. (Deferred Compensation Agreement at 1, Defs.' Mot. Dismiss Mem. Ex. B, ECF No. 14-3.) The Recitals then state that "[i]t is the intent of the parties that this Agreement, a modification of the Original Plan ... complies with Section 409A of Internal Revenue Code of 1986, as amended." (*Id.*)

The 2006 Agreement states that beneficiaries will receive "a maximum of one hundred three monthly payments substantially equal to $4,555.20 per month ... following the receipt of a fully executed copy of this Agreement." (*Id.*) In other words, the 2006 Agreement differs principally from SERP A in that payments are capped at 103 months, whereas SERP A provided for lifetime payments. The 2006 Agreement also provides for back payments for those participants who had stopped receiving SERP A payments in December 2005. (*Id.* at 2.) In the case of a participant's death, participants may assign the remaining payments pursuant to the 2006 Agreement to a beneficiary. (*Id.*) Payments under the 2006 Agreement were

scheduled to end on July 1, 2014. (*Id.*) After the termination of payments under the 2006 Agreement, any payments not made to participants or their beneficiaries because of these persons' deaths would be totaled and distributed evenly in a single lump sum among the remaining participants. (*Id.*) The 2006 Agreement contains a one-year Limitations on Actions provision, barring any action based on the Agreement after one year "from the date of the alleged act or omission in respect of which such right of action first arises in whole or in part." (Deferred Compensation Agreement at § 15.) Plaintiff has received payments under the 2006 Agreement since it was implemented. (Pl.'s Resp. at 7.)

In January 2007, Glastic was sold to Rochling Glastic Composites, LP ("Rochling") through its parent company, Glastic Acquisitions. (*Id.*) In 2013, Plaintiff, through counsel, sought a determination that SERP A was not properly terminated. (*Id.*) After he was unsuccessful, Plaintiff filed the instant lawsuit on November 19, 2013, asserting two causes of action under ERISA 29 U.S.C. §§ 1132(a)(1)(b) and 1132(a)(3) seeking unpaid SERP A benefits dating back to January 2006 and ending upon Plaintiff's death, in addition to any profits realized by Defendants to Plaintiff's detriment. (Compl. at ¶ 1, ECF No. 1.) Plaintiff also asserted a cause of action under 29 U.S.C. § 1132(c) seeking statutory damages for failure to produce all requested documents related to Plaintiff's SERP A benefits. (*Id.*) Defendants filed their Motion to Dismiss on January 17, 2014.

On February 14, 2014, Plaintiff filed his Opposition to the Motion to Dismiss (ECF No. 20) and a Motion for Summary Judgment on a Limited Issue in the Case (ECF No. 21). Plaintiff relies on the same brief for both his Opposition and his Motion for Summary Judgment because "Defendants

... presented facts [in their Motion to Dismiss] that were not in dispute that permita [sic] Mr. Schempp to file this Motion for Summary Judgment on the narrow issue presented." (Pl.'s Mot. Summ. J. at 1-2, ECF No. 21.)

## II. STANDARD OF REVIEW

The court examines the legal sufficiency of the plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6). *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993). The Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), clarified the law regarding what the plaintiff must plead in order to survive a Rule 12(b)(6) motion.

When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the Complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955. The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S.Ct. 1955. Even though a Complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

The Court in *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937, further explains the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937.

The Sixth Circuit has held that a court may consider allegations contained in the Complaint, as well as exhibits attached to or otherwise incorporated in the Complaint, all without converting a Motion to Dismiss to a Motion for Summary Judgment. Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir.1997). However, because the Parties have not only referred to the two documents at issue—SERP A and the 2006 Agreement—, which may be considered as part of the complaint, but also, without objection, other documents outside of the pleadings, the court treats Defendants' Motion to Dismiss as a Motion for Summary Judgment pursuant to Rule of Federal Procedure 12(d).

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Though the Rule was amended in 2010, the summary judgment standards and burdens have not materially changed. See Fed. R. Civ. P. 56 advisory committee's notes (2010 Amendments) ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c)...."); *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 n. 4 (1st Cir.2011). In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir.1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.*

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Zinn v. United States*, 885 F.Supp.2d 866, 871 (N.D.Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F.Supp. 1, 4 (S.D.Ohio 1992)). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id.* Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir.1989) (citing *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C.Cir. 1988)).

### III. LAW AND ANALYSIS

In his Complaint, Plaintiff bases his claims for relief on the assertion that SERP A could only be terminated or amended with the signatures of Grant and Donnelly, specifically. (Compl. at ¶ 58.) Because neither Grant nor Donnelly signed the SERP A termination, Plaintiff argues that the termination was improper and that the 2006 Agreement did not terminate

his rights under SERP A. (*Id.*) This same argument is the basis for Plaintiff's Motion for Summary Judgment. (Pl.'s Mot. Summ. J. at 1.)

Defendants argue that the provision in SERP A requiring Grant and Donnelly's ratification should not be read as requiring the signatures of those specific individuals, but instead as requiring the signatures of Glastic's President and Vice President at the time of termination. (Defs.' Resp. at 13-17, ECF No. 24.) Defendants argue that if Grant's or Donnelly's signatures were read to be required for modification, it would lead to an absurd result should either of those persons leave the company or die. (*Id.* at 16.) Defendants also argue that the 2006 Agreement was a mutually agreed upon modification of SERP A. (*Id.* at 7–13.) Defendants rely upon the language in the 2006 Agreement stating that it is a "modification of the Original Plan," and that "Original Plan" is defined in the 2006 Agreement as the "Supplemental Executive Retirement Plan 'A'." (*Id.* at n. 7.) In the alternative, Defendants also argue that Plaintiff cannot now challenge the modification of SERP A because he has received benefits under the 2006 Agreement equaling his benefits under SERP A since 2006. (*Id.* at 12–13.)

The court finds that, regardless of whether SERP A was properly terminated, the facts show that Plaintiff voluntarily agreed to waive any claim that he may have had at the time of SERP A's termination in return for the 2006 Agreement and its negotiated terms.

■ ERISA plans are contracts governed by federal common law. *Univ. Hosps. of Cleveland v. S. Lorain Merchs. Ass'n Health & Welfare Benefit Plan & Trust*, 441 F.3d 430, 437 (6th Cir.2006); *Robbins v. Iowa Road Builders Co.*, 828 F.2d 1348, 1352-53 (8th Cir.1987). However, to develop federal common law rules on contractual interpretation, federal courts may look to both state law and general contract law principles. *Regents of the Univ. of Michigan v. Agency Rent–A–Car*, 122 F.3d 336, 339 (6th Cir.1997). In interpreting contracts, the "primary role of the court in examining a written instrument is to ascertain and give effect to the intentions of the parties." *Madison Int'l Liquidity Fund, LLC v. Al Neyer, Inc.*, No. C–1–08–305, 2009 WL 2169141, at *5 (S.D.Ohio July 17, 2009). Contract terms are usually to be given their ordinary meaning when the terms of the contract are clear on their face and the court has no need to construe the evidence otherwise. *Lincoln Elec. Co. v. St. Paul Fire and Marine Ins. Co.*, 210 F.3d 672, 683 (6th Cir.2000). The Ohio Supreme Court has stated that "[t]he intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 678 N.E.2d 519, 526 (1997) (internal citation omitted).

■ Parol, or extrinsic, evidence is only admissible if the terms of the contract are ambiguous, and can only be used to interpret, not contradict, the express language of the contract. *Lincoln Elec. Co.*, 210 F.3d at 684. If the language of a contract "is clear and unambiguous . . . there is no issue of fact to be determined." *Id.* Ambiguity exists "where contract language is susceptible to two or more reasonable interpretations." *Glidden Co. v. Kinsella*, 386 Fed.Appx. 535, 542 (6th Cir. 2010) (*quoting Potti v. Duramed Pharm. Inc.*, 938 F.2d 641, 647 (6th Cir.1991)). However, a term is not ambiguous merely because two parties offer substantially different interpretations. *Id.*; *accord 216 Jamaica Ave., LLC v. S & R Playhouse Realty Co.*, 540 F.3d 433, 440 (6th Cir. 2008). Permissible "extrinsic evidence may include (1) the circumstances surrounding

the parties at the time the contract was made, (2) the objectives the parties intended to accomplish by entering into the contract, and (3) any acts by the parties that demonstrate the construction they gave their agreement." *United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App.3d 45, 716 N.E.2d 1201, 1208 (1998).

A material issue of fact exists regarding whether SERP A was properly terminated because the Amendment Clause requiring Grant's and Donnelly's signatures is ambiguous. The Amendment Clause is ambiguous because it is unclear in which capacity Grant's and Donnelly's signatures were required. Grant and Donnelly played multiple roles in the negotiation; not only were they President and Vice President at Glastic, they were also intended recipients of the SERP A benefits. (Supplemental Executive Retirement Plan A at § 1.1, Defs.' Mot. Dismiss Mem., ECF No. 14-2.) Because of this, the requirement of Grant's and Donnelly's signatures for any amendment to or termination of SERP A could be interpreted in one of three ways: (1) the clause required the signatures of Grant and Donnelly in their personal capacities, specifically; (2) the clause required the signatures of Glastic's President and Vice President, whomever they may have been at the time the amendment or termination was sought; or (3) the clause required the signatures of two persons representing the intended recipients of SERP A benefits at the time the amendment or termination was sought. The evidence is insufficient for the court to make this determination either way. However, such determination is unnecessary in this case because the 2006 Agreement was a valid bilateral modification of SERP A.

For a valid contract to be formed, there must be an offer, mutual assent, and consideration. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 770 N.E.2d 58 (2002). Consideration is defined as a bargained for legal benefit or detriment. *Id.* Under Ohio law, parties to a contract may modify the terms of a contract through mutual assent. *Murrell v. Elder–Beerman Stores Corp.*, 16 Ohio Misc. 1, 239 N.E.2d 248, 255 (1968). Where a subsequent contract unambiguously displays the parties' intention to supersede or modify terms in a previous contract, the terms of the subsequent contract will control. *TRINOVA Corp. v. Pilkington Brothers, P.L.C.*, 70 Ohio St.3d 271, 638 N.E.2d 572, 576 (1994). The court finds that Plaintiff and Defendants voluntarily entered into the 2006 Agreement to supersede SERP A and the rights therefrom.

First, the language used in the 2006 Agreement shows a clear intent for the Agreement to serve as a modification of SERP A. On its face, the 2006 Agreement clearly states that the Agreement is "*a modification of the [SERP A]*."[2] (Deferred Compensation Agreement at 1 (emphasis added).) Other language in the 2006 Agreement also indicates that the 2006 Agreement was intended to be a modification of SERP A. For example, the "Recitals" section of the 2006 Agreement states that the Agreement was set up to compensate those who had previously lost benefits received through SERP A. While Plaintiff appears to argue that the "Recitals" are not part of the 2006 Agreement, a plain reading of the 2006 Agreement suggests otherwise. The preamble to the Agreement, which appears immediately before the "Recitals" section, states unambiguously that "[t]he following shall constitute the

---

**2.** The Agreement actually says "a modification of the Original Plan" but defines Original Plan as SERP A.

terms and conditions of this Agreement." (*Id.*) Therefore, the court finds that the 2006 Agreement, on its face, is a modification of SERP A.

The 2006 Agreement also meets all the requirements of a contract: offer, mutual assent, and consideration. First, Plaintiff, through independent counsel, negotiated each party's consideration under the 2006 Agreement. The letters attached to Defendants' Motion to Dismiss indicate that Plaintiff understood that the 2006 Agreement would replace his benefits under SERP A. (*See* Defs.' Mot. Dismiss Mem. Ex. E, ECF No. 14-6; *id.* at Ex. F, ECF No. 14-7; *id.* at Ex. G, ECF No. 14-8.) The negotiations were thorough and made several references back to the original terms of SERP A when negotiating the terms to be included in the 2006 Agreement. (*See id.* at Ex. E; *id.* at Ex. F; *id.* at Ex. G.) Once the terms were to both parties' liking, they executed the contract. As consideration in the 2006 Agreement, Plaintiff agreed to replace his potential claim for lifetime payments under SERP A in exchange for: (1) 103 monthly payments equal to the monthly payments in SERP A; (2) a lump-sum payment to Plaintiff's named beneficiary if Plaintiff died within that 103 months; and (3) an additional Executive Retirement Payment if Plaintiff was still living in July 2014.

Plaintiff tries to nullify his decision to enter into the 2006 Agreement by arguing that Defendants coerced him and that he entered the 2006 Agreement under the belief that it did not terminate his claims under SERP A. (*See* Second Schempp Decl., Pl.'s Reply Ex. A, ECF No. 26-1.) The facts alleged and the provided exhibits do not support this argument. Plaintiff was represented by independent counsel who repeatedly communicated with Defendants on Plaintiff's behalf. Nothing in the correspondence shows any coercion. (*See* Defs.' Mot. Dismiss Mem. Ex. E; *id.* at Ex. F; *id.* at Ex. G.)

Further, neither Defendants nor Plaintiff were obligated to enter into another agreement after SERP A's termination. Defendants had the right to simply terminate SERP A in accordance with the terms of SERP A. If Plaintiff believed the termination was improper, he could have sued in court then, like he's doing now. Instead, both Plaintiff and Defendants decided to negotiate for the 2006 Agreement. In fact, by Plaintiff's own admission, he saw the 2006 Agreement as an attempt by Defendants to "avoid a major dispute." (Pl.'s Resp. at 2.) Further, Plaintiff's counsel, Brian FitzSimons, referred to the 2006 Agreement as a "proposed settlement arrangement" during the negotiations. (Defs.' Mot. Dismiss Mem. Ex. F.) Thus, the facts show that Plaintiff, or at least his counsel, was fully aware that his forfeiture of any claim under SERP A was the consideration Plaintiff was providing in exchange for the new payment arrangement under the 2006 Agreement. Plaintiff signed the 2006 Agreement, and received benefits under that Agreement through its life.[3] (Defs.' Resp. at 5.) Plaintiff cannot now ignore his end of the bargain.

Construing the facts in the light most favorable to Plaintiff, the court finds that there is no genuine issue of material fact and the judgment should be entered for Defendants as a matter of law. The 2006 Agreement, on its face, replaces any rights Plaintiff may have had under SERP A. Further, correspondence between the attorneys for Plaintiff and Defendants clear-

---

**3.** Though Defendants do not assert an equitable estoppel claim (or counterclaim), the court notes that Plaintiff's conduct would support an equitable estoppel claim under federal common law. *See Bond v. General Motors Acceptance Corp.,* 142 F.3d 432 n. 5 (6th Cir. 1998) (outlining the elements of an equitable estoppel claim under federal common law).

ly confirm that fact. Plaintiff signed that Agreement, as did the officers of Glastic Corporation. Plaintiff's conclusory and non-specific assertions of misrepresentation by Defendants are of no evidentiary value.

Finally, Defendants argue that Plaintiff's claim is barred by the 2006 Agreement's Limitations on Actions provision, which bars actions on the Agreement one year after its signing. (Defs.' Mot. Dismiss at 16.) Plaintiff does not dispute this provision, but instead argues that his Complaint is based on SERP A, which does not have a limitation period beyond Ohio's eight-year statute of limitations. (Pl.'s Resp. at 17-18.) The court finds Defendants' argument to be well-taken. Plaintiff's Complaint is based primarily on the notion that the 2006 Agreement was not a proper modification of SERP A. However, for the reasons detailed above, the court finds that Plaintiff is bound by the terms of the 2006 Agreement, which replace any rights under SERP A. Thus, Plaintiff only had one year from the time SERP A was allegedly wrongfully terminated or amended to bring an action for recovery. Plaintiff filed the current action on November 19, 2013; nearly eight years after Defendants ceased original SERP A payments. Thus, the claim is time-barred. Similarly, since Plaintiff no longer has any rights under SERP A, Plaintiff has no right to damages for any documents not produced related to SERP A benefits.

Therefore, the court dismisses Plaintiff's Complaint.

### IV. CONCLUSION

For the foregoing reasons, the court grants Defendants' Motion to Dismiss (ECF No. 13), treated as a Motion for Summary Judgment, and denies Plaintiff's

Motion for Summary Judgment (ECF No. 21).

IT IS SO ORDERED.

